**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Deonte SIMMONS, Appellee.**

**No. 2011–SC–000118–DG.**

Supreme Court of Kentucky.

March 21, 2013.

Jack Conway, Attorney General of Kentucky, Jeffrey Allan Cross, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellant.

Linda Roberts Horsman, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellee.

## OPINION OF THE COURT BY JUSTICE ABRAMSON

ABRAMSON, Judge.

In July 2008, the Madison Circuit Court convicted Deonte Simmons of first-degree trafficking in a controlled substance (cocaine) and sentenced him as a second-degree persistent felon to fifteen years in prison. The jury that ultimately found Simmons guilty of that offense had only eleven members, one of the jurors having broken her ankle during an over-night recess. Simmons appealed his conviction to the Court of Appeals and claimed, among other things, that the eleven-member jury deprived him of his constitutional right to a jury trial. The Court of Appeals agreed and, finding the record ambiguous as to whether Simmons had waived the jury right he was asserting, remanded the matter to the trial court for a hearing on the question of Simmons's waiver of a twelve-person jury. If the trial court found that Simmons had validly waived any objection to the depleted jury, its judgment was to be reinstated, but if the court found insufficient evidence of a knowing and voluntary waiver, Simmons, in the Court of Appeals' view, would be entitled to a new trial. We granted the Commonwealth's motion for discretionary review to consider its contention that the Court of Appeals, in assessing the adequacy of a defendant's waiver of a twelve-member jury, applied the wrong standard.

Given Section 7 of the Kentucky Constitution and the intent clearly reflected in the Constitutional Debates, we affirm the Court of Appeals' conclusion that a twelve-person jury is a fundamental right in our Commonwealth. Any waiver of that right must be knowingly and voluntarily made by the defendant personally, not by his counsel unilaterally as a trial-management decision. While waiver of a twelve-person jury should be established through the trial court's colloquy with the defendant on the record, failure to do so may be harmless error. Where, as here, counsel has stipulated to proceeding with less than twelve jurors and the defendant has seemingly acquiesced, on remand the trial court should conduct an evidentiary hearing to determine if the defendant knowingly and voluntarily consented to that decision.

## RELEVANT FACTS

Simmons was tried along with two co-defendants in April, 2008. The three were charged with having jointly sold or transferred a small quantity of cocaine to a witness cooperating with Kentucky State Police detectives. As part of the Commonwealth's case, the cooperating witness and one of the detectives identified Simmons as an active participant in the transaction. The Commonwealth closed its case shortly before 5:00 pm the first day of trial, at which point the trial court recessed and instructed the jury to return at 9:30 the next morning.

The record resumes at about 8:45 am the next day with counsel and the three defendants present and with the court ruling on the defendants' motions for directed verdict. Those motions having been denied and the defendants having indicated that none of them would be testifying or introducing any other evidence, the court and counsel began a discussion of the jury instructions. Not long into the discussion, the court invited counsel into the court's library for a conference that was off the record. When the record resumes, at about 10:15 am, the court explains to the just assembled jury that a fellow juror has suffered a broken ankle and so will not be able to continue with the trial. "Nevertheless," the court continues, "the defendants

and the Commonwealth have agreed to proceed with eleven jurors as opposed to the twelve as normally constituted." [1]

At that point, the defendants all announced that their cases were closed, and the court sent the jury to an early lunch so that the court and counsel could finish preparing the instructions. Following the lunch recess, the court came back on the record and before recalling the jury stated, "Before we begin, the court does want to note for the record that we have previously discussed the problem with one of the jurors being absent and everyone has waived that objection." Counsel for all the defendants responded, "That's correct, your Honor." The eleven-member jury was then recalled, and eventually found Simmons guilty of having been complicit in the alleged cocaine transaction.

Simmons appealed from the judgment based on that verdict, and the Court of Appeals agreed with him that under Section 7 of our Kentucky Constitution a criminal defendant's right to a "trial by jury" means a jury composed of twelve members, and thus the right to a twelve-member jury is as fundamental as his right to a jury altogether. Accordingly, the Court held that a defendant's waiver of his right to a twelve-person jury must satisfy the same standards as his waiver of a jury trial, *i.e.*, that it must have come from the defendant himself and must have been entered knowingly and voluntarily. Simmons's counsel's acquiescence to proceeding with an eleven-member jury was, in the Court of Appeals' view, insufficient by itself to effect the waiver of Simmon's right to a full, twelve-person jury. Because otherwise the record gave no indica-

tion that Simmons had been advised of and had personally waived that right, the appellate court concluded that at least to the extent that the trial court had failed to create an adequate record of Simmons's waiver an error had occurred. On the other hand, the Court of Appeals believed that Simmons's presence when his counsel acquiesced in the eleven-juror proceeding together with his failure to raise any sort of objection created enough uncertainty about the harmfulness of the error to require that the matter be remanded to the trial court for an evidentiary hearing. At the hearing, the trial court was to determine whether at some point off the record Simmons had been advised of his right to a jury of twelve and had voluntarily agreed to forego it.

The Commonwealth moved for discretionary review and now claims that, even if constitutionally grounded, the right to a twelve-member jury is not of the same stature as the right to a jury trial and, being of such inferior status, the defendant's personal waiver is not required. According to the Commonwealth, a waiver by counsel, as occurred in this case, should be deemed effective absent some contemporaneous objection by the defendant. Because we are not persuaded by its deprecation of the full-jury right accorded by the Kentucky Constitution, we reject the Commonwealth's claim.

### ANALYSIS

**I. The Kentucky Constitution's Guarantee of the "Ancient Mode of Trial By Jury."**

As the parties note, Section 7 of our Kentucky Constitution provides that "The

---

1. The trial court did not seat an extra juror or jurors as allowed by Kentucky Rule of Criminal Procedure (RCr) 9.32, leaving the jury depleted to eleven upon the absence of one juror. Although our criminal rules do not require the seating of alternate jurors, we strongly urge trial courts to adopt such a practice. By seating one or two alternates, even in very simple and abbreviated trials, courts may avoid the stress and expense of otherwise unnecessary retrials.

ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution." [2] Section 11 of our Constitution provides in part that "in prosecutions by indictment or information, he [the accused] shall have a speedy public trial by an impartial jury of the vicinage." Together these sections preserve the ancient mode of trial by jury in felony cases and require this trial, among other things, to be speedy and public. In construing these rights, this Court and its predecessor have long understood the "ancient mode" of trial by jury to require a jury of twelve persons all of whom must agree upon a verdict, as was the practice at common law. *Wendling v. Commonwealth*, 143 Ky. 587, 137 S.W. 205 (1911); *Wells v. Commonwealth*, 561 S.W.2d 85 (Ky.1978); *Burnett v. Commonwealth*, 31 S.W.3d 878 (Ky.2000).[3] This interpretation accords with the drafters' discussion of the matter.

At the 1890 Constitutional Convention for the drafting of our current Constitution, what became Section 7 was offered as it now appears by the Committee on the Preamble and the Bill of Rights to the Committee of the Whole. Before that latter Committee an amendment to Section 7 was proposed which, among other changes, would have stricken the words "ancient mode." Those words, in the view of the amendment's proponents, were imprecise, possibly pernicious, and unnecessary. They were imprecise and possibly pernicious because "there were so many ancient

modes of trial by jury," and because not all ancient practices were to be emulated—an early practice, for example, of encouraging jury unanimity by punishing "refractory" jurors was surely not to be revived. *Official Reports of the 1890 Constitutional Convention* at 1154 (Mr. Washington, Campbell County). The words "ancient mode" were unnecessary to the new Constitution, the supporters of the amendment to Section 7 argued, because even without them, "The word 'jury' is of distinct, well-defined significance. It means in law twelve men, just as certainly and as unmistakably as the word 'trio' means three." *Id.* at 1153 (Mr. Washington).

Against the amendment, one delegate noted that Kentucky had

already had three Constitutions ... and in each and all of them are the words 'the ancient mode of trial by jury shall remain sacred.' What does that mean? It means every man who is put upon trial, every man who has a case to be tried, shall have a trial before a jury of twelve persons, and that they shall return a unanimous verdict.

*Id.* at 1154–55 (Mr. Carroll, Henry County). Given that history, the delegate queried what it would mean for the 1890 Convention to strike the words "ancient mode." Would not the courts, the delegate worried, applying standard rules of construction, be apt to conclude that the change in language was intended to reflect a change in the law, a departure from the common-law jury in favor of a legislative

---

**2.** As the issues before us involve only questions of constitutional and statutory construction, our review is *de novo. Greene v. Commonwealth, Administrative Office of the Courts,* 349 S.W.3d 892 (Ky.2011).

**3.** Since 1978, Kentucky Revised Statute (KRS) 29A.270(1) and KRS 29A.280(1) and (3) have likewise required that felony defendants be tried before juries of twelve whose

verdicts must be unanimous. The Court of Appeals ruled that these statutory rights were not intended to be more extensive than the corresponding constitutional rights, and thus that a waiver deemed adequate for constitutional purposes would also be adequate under the statutes. Neither party has questioned that aspect of the Court of Appeals' Opinion, and we do not address it.

jury: "I take it that the Courts would not have much trouble in coming to the conclusion that the Legislature might say that a jury of nine, or seven, or six men was a jury in the meaning of this section." *Id.* at 1155 (Mr. Carroll). The matter was then put to a vote, and the amendment was rejected by a margin of 57 nays to 29 yeas, with 14 delegates absent. *Id.* at 1156. The "ancient mode" of trial by twelve jurors was ensconced in our Constitution.[4]

## II. Waiver of Jury Trial Rights Generally.

As the quoted extracts from the Constitutional Debates make clear, the drafters of our Constitution understood and fully intended a felony defendant's right to a trial by jury to mean a jury of twelve persons.[5] The Commonwealth concedes as much, but insists that that is not the end of the matter. It maintains that constitutional rights are not all of equal stature, and in particular that the right to a jury of twelve, however understood by the drafters, is not as fundamental as the right to a jury trial. The waiver of the former right, therefore, according to the Commonwealth, need not be regulated and assessed according to standards as strict as those applicable to the waiver of the latter right. Rather, in the Commonwealth's view, the waiver of a twelve-person jury should be included among the tactical decisions that counsel is authorized to make on behalf of

his or her client without the client's express consent. We disagree.

■■■■ Most rights, of course, constitutional rights included, may be waived, *Commonwealth v. Townsend*, 87 S.W.3d 12, 15 (Ky.2002), and, as the Commonwealth correctly notes, the validity of any waiver of a constitutional right, as well as the inquiry required by the court to establish a valid waiver, will depend on the circumstances of the particular case and the nature of the constitutional right at issue. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Gonzalez v. United States*, 553 U.S. 242, 128 S.Ct. 1765, 170 L.Ed.2d 616 (2008). Under our system of adversarial criminal prosecution, the accused person's right to a jury trial has long been deemed one of the most fundamental and is expressly protected by both the Sixth Amendment to the U.S. Constitution and by Sections 7 and 11 of our Kentucky Constitution. So fundamental is the felony defendant's right to a jury trial, in fact, that waiver of the federal right was not recognized until the 1930 Supreme Court case of *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), and waiver of the Kentucky right was not allowed until the 1975 case of *Short v. Commonwealth*, 519 S.W.2d 828 (Ky.1975).

In *Short*, our predecessor Court overruled long-standing precedent to the effect

4. The 1890 Constitutional Convention later debated and adopted Section 248, discussed below, which does permit six-person juries in district court matters.

5. *Cf.* the Sixth Amendment to the United States Constitution, the jury trial provisions of which, the United States Supreme Court has held, do not incorporate a twelve-member jury requirement. As discussed more fully below, in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Court upheld a Florida statute providing for a six-person jury in certain felony cases. The

Court reviewed the history of the jury-trial right and concluded that the common-law's long retention of a twelve-member jury was an "historical accident" unreflective of the right's essence, 399 U.S. at 89, 90 S.Ct. 1893, and further that there was no evidence the framers of the Sixth Amendment intended to constitutionalize that aspect of the common-law practice, 399 U.S. at 98–99, 90 S.Ct. 1893. Accordingly, the Court held that, as applied to the States through the Fourteenth Amendment, the Sixth Amendment does not require the States to provide twelve-person juries. 399 U.S. at 103, 90 S.Ct. 1893.

that "an accused may not waive a jury trial in felony cases or agree to a trial by jury of less than 12 members." 519 S.W.2d at 833. Instead, the Court held that the bench trial granted in that case upon the defendant's repeated requests in open court to proceed without a jury did not violate Section 7's jury trial guarantee. Thenceforth, the Court held, a felony defendant could waive the right to a jury trial, "provided always that such waiver agreement is entered into *understandingly* and *voluntarily*, and provided of course the Commonwealth agrees and the trial court approves." 519 S.W.2d at 832 (quoting from *Ashton v. Commonwealth*, 405 S.W.2d 562 (Ky.1965)). In determining whether "a waiver of a jury trial is made understandingly, intelligently, competently, and voluntarily," the Court continued, the trial court must apply "the same standards that are required on the acceptance of a guilty plea. The record made at the hearing preceding the acceptance of a waiver by the court must affirmatively set out facts which will permit an independent determination of its validity." 519 S.W.2d at 833 (*citing Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (discussing the standards for determining the validity of a guilty plea)).

Six years later, the holding in *Short* was codified in RCr 9.26(1), which provides that "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the Commonwealth." Next, in *Marshall v. Commonwealth*, 60 S.W.3d 513 (Ky.2001), we held that a written waiver of a jury trial, in compliance with the rule, could be, and was in that case, sufficient to establish the waiver's voluntariness even in the absence of a guilty-plea-like colloquy. Then, conversely, in *Jackson v. Commonwealth*, 113 S.W.3d 128 (Ky.2003), we held that where the voluntariness of a jury-trial waiver was adequately established by an on-the-record colloquy, the rule's "in writing" requirement could be excused.

*Short, Marshall,* and *Jackson* all involved defendants who waived, or purportedly waived, a jury trial and opted for a bench trial; those cases did not address, at least not directly, the waiver of the right to a twelve-person jury. Likewise, RCr 9.26(1) provides for the waiver of "a jury trial," but is silent with respect to the twelve-person jury right. With respect to the rule, the Court of Appeals agreed with the Commonwealth that it applies only to requests for a bench trial and has no bearing on depleted-jury proceedings. But noting what it believed, under Section 7 of our Constitution, was the equally fundamental nature of both the right to a jury trial and the right to a twelve-member jury, and noting as well *Short's* express allowance for the waiver of both rights, the Court of Appeals held that the twelve-member jury waiver was subject to the same *Short* requirements and standards as the jury trial waiver, *i.e.,* that before accepting the waiver of a defendant's right to a twelve-person jury, the trial court is to conduct an on-the-record colloquy with the defendant to ensure that the waiver is knowing, voluntary, and intelligent. The trial court's failure to conduct such an on-the-record colloquy in this case was, in the Court of Appeals' view, an error, but an error that could be deemed harmless if, on remand, the Commonwealth can show that Simmons's waiver was nevertheless knowing and voluntary. The Commonwealth, as noted, takes issue with both of the Court of Appeals' premises. The twelve-person jury right is not on the same constitutional footing as the right to a jury trial, according to the Commonwealth, and *Short* cannot fairly be read as precedent to the contrary, since neither the constitutional status of the twelve-person jury nor the requirements for its waiver were at issue in that case.

To begin with the Commonwealth's second point regarding *Short,* it should be noted that prior to the United States Supreme Court's decision in *Williams v. Florida,* 399 U.S. at 78, 90 S.Ct. 1893, discussed below, it was widely presumed that a criminal defendant's right to a jury trial, as guaranteed by Article 3, Section 2 of the United States Constitution, by the federal Sixth Amendment, and by similar state constitutional provisions, meant, fundamentally, a right to a common-law jury, a jury, that is, of twelve persons whose verdict had to be unanimous. The Supreme Court itself, as noted in *Williams,* had several times endorsed that presumption. 399 U.S. at 90–92, 90 S.Ct. 1893 (discussing *Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898) and several subsequent cases). Indeed, in *Patton v. United States,* 281 U.S. at 276, 50 S.Ct. 253, the case in which the Court first recognized a defendant's right to waive a jury trial, the waiver at issue was not a request for a bench trial, but, as in this case, involved a stipulation to proceed with an eleven-member jury after one member had become ill. The Supreme Court understood the eleven-member panel to be as much a deviation from a "constitutional jury" as no jury at all and held that while waiver was allowable, "before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant." 281 U.S. at 312, 50 S.Ct. 253.

*Short* was very much grounded in that same presumption of a constitutionalized common-law jury. Although *Short* involved a request for a bench trial, not only did the Court quote extensively from *Patton,* but it also relied without distinction on cases involving the waiver of a twelve-person jury and juror unanimity as cases raising the same constitutional concern. 519 S.W.2d at 830–32 (discussing felony cases in which waiver had not been allowed

and misdemeanor cases in which it had been). Thus, while the Commonwealth is technically correct that in *Short* the Court did not have the twelve-member-jury issue directly before it, the Court of Appeals did not misread *Short's* clear implication that the waiver procedure the Court was applying in the context of a motion for a bench trial would apply as well to the waiver of a twelve-member jury.

## III. The Right to a Twelve–Person Jury.

That brings us to the Commonwealth's principal contention, which is that the old presumption concerning the sanctity of the common-law jury no longer obtains and should be abandoned at least to the extent of recognizing a meaningful distinction between the waiver of a jury trial and the waiver of a twelve-person jury. Under federal law, of course, that distinction has been recognized by our nation's highest court. In *Williams v. Florida,* 399 U.S. at 78, 90 S.Ct. 1893, the Supreme Court reconsidered the presumed constitutionalization of the twelve-member jury and decided that the presumption was not well-founded. The Court surveyed anew the history of the jury-trial right and concluded that the common law's insistence on twelve jurors was based more on habit and accident than reason. The Court also considered the legislative history of the Sixth Amendment and, unlike the inescapable conclusion required by the proceedings of Kentucky's 1890 Constitutional Convention, found no indication that the drafters had intended to incorporate the particulars of common law jury practice in the U.S. Constitution. Rather, in the Court's view, the federal constitutional right to be tried by a jury of one's peers was intended "to prevent oppression by the Government ... [to] 'safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.'" 399 U.S.

at 100, 90 S.Ct. 1893 (*quoting from Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)). Given that purpose, the *Williams* Court continued,

> the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the common-sense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence. The performance of this role is not a function of the particular number of the body that makes up the jury. To be sure, the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representative cross-section of the community. But we find little reason to think that these goals are in any meaningful sense less likely to be achieved when the jury numbers six, than when it numbers 12—particularly if the requirement of unanimity is retained. And, certainly the reliability of the jury as a factfinder hardly seems likely to be a function of its size.

399 U.S. at 100–01, 90 S.Ct. 1893 (footnote omitted). Accordingly, the Court held that the Sixth Amendment, as applied to the States through the Fourteenth Amendment, did not invalidate a Florida statute providing for six-person juries in certain felony cases.

The Commonwealth argues that in light of *Williams* it makes sense to regard the right to a twelve-person jury, even if that right is retained in our Constitution, as of lesser importance than the right to a jury trial and as subject to a less exacting form of waiver. That was the conclusion of the Supreme Court of Vermont, which held, in *State v. Machia,* 155 Vt. 192, 583 A.2d 556 (1990), that whereas the right to a jury trial went to the heart of an accused person's constitutional rights, the right to a twelve-person jury was not as crucial, although that right, too, was guaranteed by the Vermont Constitution. Thus, under Vermont's rules of criminal procedure, "a stipulation to a jury of fewer than twelve persons is not treated as the equivalent of a jury waiver." 583 A.2d at 558. Rather, while the waiver of a jury trial could not be effected except by the defendant's personal, recorded expression of a desire so to proceed,

> the decision to stipulate to an eleven-person jury is a 'tactical' or 'strategic' one that can be made by counsel with the defendant's implied consent. [Thus,] defense counsel's on-the-record oral stipulation to an eleven-member jury, confirmed in defendant's presence, did not deprive defendant of his constitutional right to trial by jury.

583 A.2d at 560.

The Commonwealth urges us to reach a like result, but we conclude that Section 7 of the Kentucky Constitution gives more weight than the Commonwealth would allow to an accused person's right to a jury of twelve persons. As noted above, unlike the federal constitution, which, the Supreme Court has held, neither expressly nor by implication was meant to incorporate any of the incidents of the common-law jury, Section 7 provides expressly for a jury trial according to "the ancient mode." We know beyond cavil, furthermore, that the authors of that Section understood "the ancient mode" of jury trial to include the common-law incidents of twelve-person panels and unanimous verdicts. As the contemporaneous Convention debate discussed above reflects, the drafters insisted on the right to a twelve-person jury even in the face of criticisms like those leveled against it by the Supreme Court in *Williams.*

■ Of course, Section 7 expressly allows for modifications of the "ancient mode" of jury trial "as may be authorized by this Constitution." Such modifications appear in Section 248, which permits non-unanimous verdicts in grand jury and civil proceedings and provides for six-person juries "[i]n civil and misdemeanor cases, in courts inferior to the Circuit Courts." During the debate leading up to the Convention's adoption of this Section, Mr. Washington, the delegate from Campbell County, spoke at length (in a speech that fills nearly nineteen printed pages) in favor of relaxing the unanimity requirement in civil cases. In the course of his argument, he, as did the Supreme Court in *Williams,* cited numerous scholarly sources to the effect that whatever may have been the medieval conditions giving rise to the common law's twelve-person and unanimity requirements, those conditions no longer prevailed. The point, obviously, was that a blind adherence to tradition ought not obstruct the law's advance. "From a modern standpoint," said Mr. Washington, "there can be no occult virtue in the number twelve." *Official Reports of the 1890 Constitutional Convention* at 4788. In light of this critique of the "ancient mode" of jury trial, the Convention, in Section 248, made adjustments to it, but Section 7 remained as it stands even now: an express guarantee in all felony trials not just of a jury, but of a twelve-person jury the verdict of which must be unanimous. Given this implicit rejection by the Convention itself of the Commonwealth's reasons for ascribing second-class status to the twelve-person jury right, we agree with the Court of Appeals that that right must be characterized under our law as sufficiently fundamental to require for its waiver some assurance that the defendant has been apprised of the right and has personally agreed to forego it.

## IV. Personal Waiver of a Twelve–Person Jury.

■ Our conclusion that a twelve-person jury can only be waived by the defendant is in accord with cases from other states where the waiver of a twelve-person jury similarly implicates the constitutional right to a jury trial. The courts in most such states have held that the right to a full jury can be waived only through a knowing and voluntary act of the defendant himself or herself adequately reflected in the record. *State v. Stegall,* 124 Wash.2d 719, 881 P.2d 979 (1994) (holding that the record must demonstrate either the defendant's personal expression of intent or his informed acquiescence in counsel's stipulation); *State v. Hegg,* 410 N.W.2d 152, 155 (N.D.1987) ("Silently proceeding with trial before a six-person jury is not an express and affirmative waiver of one's constitutional right to a jury of twelve."); *State v. Hewitt,* 128 N.H. 557, 517 A.2d 820, 823 (1986) ("A personal waiver by the defendant, indicating his understanding of the right to a full jury, is required to effectuate the constitutional guarantee."); *Walker v. State,* 578 P.2d 1388, 1389 (Alaska 1978) (Pretrial stipulation by counsel was insufficient because "[w]aiver of the right to trial by a jury of twelve persons requires that the court personally address the defendant."); *State v. McGee,* 447 S.W.2d 270, 273 (Mo.1969) ("We agree that complete waiver of a jury and consent to be tried by less than twelve jurors in substance amount 'to the same thing.' "); *State v. Simpson,* 29 Kan. App.2d 862, 32 P.3d 1226 (2001) (*citing State v. Hood,* 242 Kan. 115, 744 P.2d 816 (1987), in support of holding that waiver of twelve-person jury must be personally addressed to the defendant); *People v. Traugott,* 184 Cal.App.4th 492, 109 Cal.Rptr.3d 66, 72 (2010) ("Like the waiver of the right to a jury, the consent to a jury of fewer than 12 persons must be expressed by the

defendant in open court."). *See generally* V. Woerner, Annotation, *Sufficiency of Waiver of Full Jury,* 93 A.L.R.2d 410 (1964, updated weekly). *But cf. Machia,* 583 A.2d at 556 (holding that counsel may stipulate to a reduced jury panel); *and see People v. Bracey,* 213 Ill.2d 265, 290 Ill. Dec. 202, 821 N.E.2d 253, 256 (2004) ("Generally, a jury waiver is valid if it is made by defense counsel in defendant's presence in open court, without an objection by defendant.").

Against this result, the Commonwealth refers us to a distinction the United States Supreme Court has developed between certain fundamental constitutional rights which may be waived only personally by the defendant after having been adequately informed, and other constitutional rights, no less basic perhaps, the waiver of which may be effected by counsel in the course of managing the conduct of trial:

> "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial.... As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.... Thus, decisions by counsel are generally given effect as to what arguments to pursue, ... what evidentiary objections to raise, ... and what agreements to conclude regarding the admission of evidence, ... Absent a demonstration of ineffectiveness, counsel's word on such matters is the last."

*Gonzalez v. United States,* 553 U.S. at 248–49, 128 S.Ct. 1765 (*quoting from New York v. Hill,* 528 U.S. 110, 114–15, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000); citations and internal quotation marks omit-

ted). Among the rights recognized as requiring the defendant's personal waiver are the rights "to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Gonzalez,* 553 U.S. at 251, 128 S.Ct. 1765 (*quoting from Florida v. Nixon,* 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004); citation and internal quotation marks omitted). In *Gonzalez,* the Court held that waiving the right to have an Article III judge conduct *voir dire* in favor of having a magistrate judge do so was among the trial-management waivers properly allowed to counsel. The Commonwealth argues that stipulating to an eleven-member jury should similarly be deemed a matter of "trial strategy" left, absent the defendant's objection, to counsel's discretion. Again, we must disagree.

Even under federal law, which, as noted, does not constitutionally guarantee a twelve-person jury, a number of the federal Courts of Appeal have held that waiver of the statutory right to such a jury[6] requires the defendant's personal stipulation, *United States v. Taylor,* 498 F.2d 390 (6th Cir.1974); *United States v. Reyes,* 603 F.2d 69 (9th Cir.1979), or at least on-the-record assurance that counsel consulted with the defendant before counsel stipulated, *United States v. Vega,* 447 F.2d 698 (2nd Cir.1971). *But see, United States v. Spiegel,* 604 F.2d 961 (5th Cir.1979) (counsel's stipulation sufficient); *United States v. Pacente,* 503 F.2d 543 (7th Cir.1974) (same). As the Ninth Circuit Court of Appeals observed in *Reyes,* such a requirement not only helps to ensure that there is evidence that the defendant in fact consented, but as importantly it helps to impress upon the defendant the significance of what is being consented to, 603 F.2d at 71—in our case the waiver of a fundamental state constitutional right.

Moreover, unlike many of the waivers necessarily entrusted to counsel as a mat-

6. Fed. R.Crim. Proc. 23(b).

ter of trial management and strategy, the defendant's waiver of the right to a full jury can be canvassed by the trial court without in any way revealing defense strategy or straining the court's neutrality. *Hewitt*, 517 A.2d at 822. Another reason offered for entrusting certain waivers to counsel is the difficulty and impracticality in many cases of explaining the choice to a layperson who lacks counsel's training and experience. *See, e.g., Gonzalez*, 553 U.S. at 250, 128 S.Ct. 1765 ("[R]equiring personal, on-the-record approval from the client could necessitate a lengthy explanation the client might not understand at the moment and that might distract [counsel] from more pressing matters."). The decision to proceed (or not) with a depleted jury, however, is not one, like an evidentiary objection, that need be made in the heat of the moment, and we fail to see that counsel's reasons for or against proceeding with a depleted jury are apt to be so hard to explain that the defendant should not be allowed to weigh them for himself after having been fully apprised of his twelve-member jury-trial right. We reject, therefore, the Commonwealth's characterization of the issue as one of "trial strategy" that can be decided by counsel alone.

## V. Remand for an Evidentiary Hearing.

■ Agreeing, then, with the Court of Appeals that the trial court erred by failing to establish, on the record, that Simmons was aware of his right to a twelve-person jury and that he personally waived that right, we come to the question of remedy. The problem, as the Court of Appeals noted, is that while the record does not permit a finding that Simmons was adequately advised of his full-jury right and personally waived it, it does raise that possibility, inasmuch as Simmons was present and sat by without objecting as his counsel stipulated to the waiver. This Court addressed a similar situation in *Jackson v. Commonwealth*, 113 S.W.3d at 128. In that case, in violation of RCr 9.26, the trial court conducted a bench trial without first having obtained the defendant's written waiver of his right to a jury trial. We held that while the rule's requirement that the waiver be "in writing" could be relaxed where an on-the-record colloquy with the defendant established that his waiver was knowing and voluntary, counsel's stipulation to a bench trial, by itself, was not sufficient. As in this case, however, counsel's stipulation had been made in the defendant's presence and without the defendant's objection, and in those circumstances, the *Jackson* Court held, an automatic reversal of the defendant's conviction was not required.[7] Rather, the Court vacated the conviction and remanded the case to the trial court "for an evidentiary hearing at which the Commonwealth may attempt to prove that Appellant's attorneys' bench trial requests were the result of proper consultation with Appellant and a knowing, voluntary, and intelligent waiver by Appellant of his right to trial by a jury." 113 S.W.3d at 136.

We agree with the Court of Appeals that a like result is appropriate here. Although *Jackson* addressed RCr 9.26 and the purported waiver of a jury trial, whereas this case involves the waiver of a twelve-person jury, to which the rule does not apply,[8] the

---

**7.** The *Jackson* Court noted that the appellant never raised the jury trial waiver issue until the appeal and even then did "not assert that his attorneys acted without his informed consent when they requested a bench trial on his behalf," instead arguing that the record was "silent" as to a "knowing and intelligent

waiver." 113 S.W.3d at 135. Simmons is in the same posture, never having alleged that counsel acted without his consent but insisting that his consent cannot be imputed based on a "silent record."

**8.** KRS 29A.280 provides that in the Circuit Court "at any time before the jury is sworn,

two waivers, as discussed above, are of such stature under Kentucky law, that comparable waiver standards should apply to both. Certainly, the waiver of a twelve-person jury should not be subject to a stricter standard than the waiver of a jury trial. We agree with the Court of Appeals, therefore, that although the trial court erred by not insuring on the record that Simmons had been apprised of his right to a twelve-person jury and personally agreed to waive it, the error is harmless if that in fact is what Simmons's acquiescence to his counsel's stipulation meant. A remand is necessary for the trial court to make that determination.

As a final point, in *Jackson* we noted that at the evidentiary hearing for which the case was remanded,

> [t]he Commonwealth shall have the burden of proof on this issue [of off-the-record waiver], and if the Commonwealth does not satisfy its burden, Appellant shall be entitled to a new trial. If, however, the trial court finds that Appellant made a constitutionally-valid waiver of his right to trial by jury that he communicated to the court through his attorneys' motions, the trial court should reinstate the judgment of conviction, and Appellant may seek appellate review of the trial court's factual determination.

113 S.W.3d at 136. The Court of Appeals, accordingly, stated that the Commonwealth would bear the burden of proof at the evidentiary hearing on remand in this case. The Commonwealth urges us to revisit this portion of *Jackson* and to impose on Simmons the burden of proving that his "valid waiver was actually invalid." We decline this invitation for a couple of reasons. First, we do not agree that counsel's stipulation to the eleven-juror proceeding implies a valid waiver that Simmons must now rebut. Counsel's four-word stipulation in this case provides no basis for presuming that she spoke to Simmons about the matter at all, much less that she explained to him the nature of the right he was giving up and his options at that point in the trial. Indeed, counsel may have believed, as the Commonwealth has posited to this Court, that the decision to proceed with eleven jurors was one she could make unilaterally, a trial-management decision.

 Furthermore, although the Commonwealth is correct that as the appellant Simmons bore the initial burden on appeal of showing that an error occurred, he met that burden by showing that he was tried by a facially unconstitutional jury. As the Court of Appeals correctly noted, even though Simmons did not preserve that alleged error, in the absence of a valid waiver the error is palpable and clearly affected Simmons's substantial rights. RCr 10.26; *cf. United States v. Curbelo,* 343 F.3d 273 (4th Cir.2003) (holding that violation of the federal right under Fed. R.Crim. Proc. 23(b) to a twelve-person jury was a structural error). He is entitled to relief, therefore, unless he entered a valid waiver, and he will not be presumed to have done so from a silent record. In general, of course, courts " 'do not presume acquiescence in the loss of fundamental rights,' " *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. 1019 (*quoting from Ohio Bell Telephone Co. v. Public Utilities Commission,* 301 U.S. 292, 307, 57 S.Ct.

the parties with the approval of the court may stipulate that the jury shall consist of any number less than twelve (12), except that no jury shall consist of less than six (6) persons." While this statute recognizes the parties' right to agree to a jury of fewer than twelve persons, it does not address the procedure by which the waiver is to be effected, and in any event applies only to waivers made before the jury is sworn, not to mid-trial waivers as occurred in this case.

724, 81 L.Ed. 1093 (1937)), and the Supreme Court has held that, at least on direct appeal, the waiver of certain fundamental rights—the trial-related rights a defendant relinquishes by pleading guilty—may not be presumed from a silent record. *Boykin v. Alabama*, 395 U.S. at 238, 89 S.Ct. 1709; *but see Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (upholding Kentucky's presumption of guilty-plea validity on collateral review). For the reasons discussed above, we remain convinced that the right to a twelve-person jury is likewise sufficiently fundamental under the Kentucky Constitution to preclude presuming from a silent record that it has been waived. The burden of rebutting Simmons's claim, then, by proving such a waiver is, as we held in *Jackson*, the Commonwealth's.

The Commonwealth counters by referring us to *Filiaggi v. Bagley*, 445 F.3d 851 (6th Cir.2006), *Sowell v. Bradshaw*, 372 F.3d 821 (6th Cir.2004), and *Whitehead v. Cowan*, 263 F.3d 708 (7th Cir.2001) for the proposition that the burden of proof rests with the appellant. None of those cases, however, involved a silent record. In all of them, the appellant personally waived a jury trial, but then later claimed that the waiver should be deemed invalid. In those circumstances, the courts held the burden of showing invalidity is the appellant's. Simmons's claim is not that he made an express waiver which was invalid, but rather that no waiver at all can be found in the record. Also unavailing is the Commonwealth's suggestion that the mere presence of counsel should give rise to a presumption that the defendant was properly advised and proceeded knowingly and voluntarily. If that were indeed the rule then counseled guilty pleas could also be upheld on the basis of a silent record.

The Commonwealth worries that unless the burden of proof is shifted to the defendant, a dishonest defendant will be able to disavow a valid waiver because the trial judge failed to question him about it. The short answer in future cases, of course, is that a brief colloquy with the defendant, or some other assurance on the record that the defendant is waiving his right to a twelve-person jury knowingly and voluntarily, is a small price to pay for the protection of a fundamental right. Should it appear that the trial court has overlooked this procedure, the Commonwealth is free to request it. As for cases, such as the one before us where there is no recorded colloquy but the defendant apparently acquiesced in counsel's stipulation, an evidentiary hearing will not be rendered meaningless by virtue of the Commonwealth's inability to get to the truth of a matter known only to the defendant and counsel, *i.e.*, the attorney-client privilege cannot be used to shield disclosure of a communication regarding the waiver of a twelve-person jury.

Recently, in *3M Company v. Engle*, 328 S.W.3d 184 (Ky.2010), this Court noted that a client's waiver of the attorney-client privilege may be implied where the client takes a position that places his communications with counsel in issue:

> The client may waive the [attorney-client] privilege by taking positions that place the substance of the communications in issue.... A position that seems often to bring implied waiver into play is clients' claim that they acted or refrained from acting on advice of counsel.... With this and other similar positions, the inquiry for the trial court 'is whether allowing the privilege to protect against disclosure of the information would be manifestly unfair to the opposing party.'

328 S.W.3d at 188–89 (*quoting* ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 5.05[10] at 363–64 (4th ed. 2003 & 2010 Supp.) (footnotes and citations

omitted)). In *3M Company,* the defendants sought summary judgment, claiming the plaintiffs' product liability claims were barred by the one year statute of limitations. In their responsive affidavits premised on the discovery rule, the plaintiffs claimed they filed suit within one year of learning for the first time of the possible causal connection between their lung disease and the respirators they had used as coal miners and, further, that they had first acquired this information from their attorney. This Court allowed the defendants to proceed with a deposition of the plaintiffs' counsel, as ordered by the trial court, on the limited issue of when the attorney first learned of the possible connection and when he first discussed that connection with his clients. In so ruling, we noted that (1) the information sought was highly relevant and no longer privileged due to the implied waiver; (2) there was no other means of obtaining the information and (3) the information was crucial and "could very well determine the ultimate outcome in this case." 328 S.W.3d at 188–90.

The same may be said for discovery of Simmons's communications with counsel, if any, regarding the decision to proceed with a jury of eleven members. Whether the matter was addressed and Simmons assented is not only highly relevant, but indeed dispositive of the issue on remand and clearly there is no other means of obtaining this information. To the extent, Simmons deems his privilege as a criminal defendant more deserving of protection than that of a plaintiff in a civil case, we simply note that this situation is analogous to that of the criminal defendant who places attorney-client discussions in issue by claiming he was coerced into a guilty plea. In *Rodriguez v. Commonwealth,* 87 S.W.3d 8 (Ky.2002), this Court held that an evidentiary hearing on whether counsel coerced the client to plead guilty could and should go forward despite the defendant's refusal to sign a written waiver of his attorney-client privilege. We noted that waiver was implied and automatic in that situation because counsel's conduct was placed in issue by the defendant's motion to withdraw his guilty plea but, importantly, that the waiver would apply "only as to matters put in issue by the client's motion." 87 S.W.3d at 11. On remand, the matters put in issue by Simmons's appellate contention regarding his right to a twelve-member jury are whether his counsel discussed the issue with him and, if so, whether he made a knowing and voluntary waiver of the right by agreeing to go forward with trial before the eleven-member jury.

## CONCLUSION

In sum, under Section 7 of our Constitution, the fundamental right to a jury trial includes the right, also fundamental, to a twelve-person jury. That right may be waived, but it will not be deemed waived unless it appears of record that the defendant personally opted to proceed with a depleted petit jury and did so knowingly and voluntarily. In this case, counsel's stipulation to a depleted panel was insufficient to effect the waiver of Simmons's right, and thus his conviction by a facially unconstitutional jury must be vacated. However, because Simmons's apparent acquiescence in his counsel's stipulation raises a substantial possibility that he was adequately advised of his right and agreed to forego it, that possibility may be explored on remand. If, after an evidentiary hearing, the trial court finds that Simmons validly waived his right to a twelve-person jury, the judgment of conviction shall be reinstated. Otherwise, the judgment shall stand reversed, with Simmons subject to retrial. Accordingly, we hereby affirm the Opinion of the Court of Appeals, and remand the matter to the Madison Circuit

Court for additional proceedings consistent with this Opinion.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. All concur.