RENDERED: JUNE 7, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1134-MR

ROBERT GRUMBLATT                                    APPELLANT

v.                APPEAL FROM JEFFERSON FAMILY COURT
HONORABLE LORI N. GOODWIN, JUDGE
ACTION NO. 15-CI-502339

DEBORAH GRUMBLATT                                 APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND LAMBERT, JUDGES.

EASTON, JUDGE: In this divorce case, the Appellant ("Bob") seeks reversal of the Jefferson Family Court's Order holding him in civil contempt for failing to pay $34,540 to the Appellee ("Debby") in violation of an Agreed Order. Bob argues the family court erred by holding him in contempt without an evidentiary hearing and sufficient findings of fact. Upon review of the record and applicable law, we affirm the Jefferson Family Court.

# FACTUAL AND PROCEDURAL HISTORY

This is the fourth appeal for this case. The first three appeals decided together resulted in remand to the family court. *Grumblatt v. Grumblatt*, Nos. 2016-CA-1854-MR, 2016-CA-1932-MR, 2018-CA-0800-MR, 2021 WL 137264 (Ky. App. Jan. 15, 2021). After remand, the parties reached a final, comprehensive settlement with a specific and clearly stated agreement to submit the contempt issue to the court on the existing record with only briefs to be filed.

The perhaps inevitable disagreement about the settlement agreement goes back to an Agreed Order entered on December 15, 2021. Bob and Debby executed the Agreed Order partly to permit the entry of a Domestic Relations Order ("DRO") for a retirement account. According to the Agreed Order, Bob was also to pay Debby one-half of $69,080 (*i.e.*, $34,540) representing unilateral withdrawals Bob had made from the retirement account. This payment was to be made within sixty days. The Agreed Order also addressed the division of the remaining balance of the same account. Provisions 2 and 3 of the Agreed Order state:

> 2. The parties agree to the entry of the Domestic Relations Order dividing the Ameriprise retirement account as prepared and filed by Charlie Meers on or about May 17, 2021. No legal interest shall accrue on said amount as interest and investment gains and losses are reflected in the DRO.

3.  Bob agrees to pay to Debby one-half of the total value of the withdrawals he made from the Ameriprise retirement account through September 2020 for a total sum of $34,540 ($69,080/2) within 60 days.

Sixty days passed, and Bob did not make the payment to Debby as mandated by Provision 3 of the Agreed Order.  Debby's counsel tried to resolve the issue informally but to no avail.  On February 22, 2022, Debby filed a Motion for Contempt.  Bob filed a response, arguing he did not intend for the payment mentioned in Provision 3 of the Agreed Order to be in addition to the disbursement pursuant to the parties' DRO from the same account as stated in Provision 2.  In other words, Bob claimed Provision 3 was not a separate obligation to pay any amount of money.  In support of his position, Bob pointed to the phrase "gains and losses are reflected in the DRO" as including prior payments and also argued payments made were just an advancement to be reflected in the final payout of the total account.

The family court conducted a hearing on August 17, 2022.  At the hearing, counsel for Debby informed the family court that the parties agreed to submit the issues of contempt and attorney fees to the Court.  The parties agreed to a briefing schedule on the interpretation of Provisions 2 and 3 of the Agreed Order.  Bob confirmed to the family court that he acknowledged and affirmed this agreement to submit the contempt issue on the briefs.

On May 31, 2023, the circuit court issued its Order sustaining Debby's Motion for Contempt. The circuit court stated Provisions 2 and 3 were unambiguous and that Provision 3 clearly directed Bob to pay Debby $34,540. The circuit court found that Bob did not have good cause to dispute his obligation to pay Debby $34,540, and that Bob's interpretation of the Agreed Order was "unreasonable and self-serving." The circuit court found Bob in contempt for his failure to pay pursuant to the Agreed Order, awarded Debby attorney fees associated with the contempt motion, and ordered that Bob may purge himself of contempt by paying at least 50% of the amount due, or $17,270, no later than the sentencing date on August 2, 2023.

Bob hired another attorney who then filed a Motion to Amend, Alter, or Vacate the May 31, 2023, Order pursuant to CR[1] 59. When Bob and his new attorney showed up for the contempt sentencing the attorneys argued[2] about the lack of a contempt hearing. The family court issued an Order on August 30, 2023, denying Bob's CR 59 motion. The family court realized that Bob would be

---

[1] Kentucky Rules of Civil Procedure.

[2] The attorneys often cut each other off in mid-sentence, and Bob's counsel made improper statements about Debby's counsel being a liar. Other unnecessary and inappropriate things were said. What was scheduled as a fifteen minute hearing took more than thirty minutes. If we remove the unnecessary sparring, the substance of the hearing could have been addressed in the fifteen minutes allotted. We also note that the record does not contain avowal or any other sufficient offer of what specific testimony Bob may have offered to further explain his interpretation of the Agreed Order at an evidentiary hearing.

entitled to a separate evidentiary hearing on the issue of contempt, but that at the August 17, 2022, hearing, "[Bob] expressly waived his right to a contempt hearing, on the record, after having the opportunity to confer with counsel." This appeal followed.

## STANDARD OF REVIEW

Trial courts have broad discretion to hold individuals in contempt when they willfully disobey or openly disrespect the rules or orders of a court. *Sidebottom v. Watershed Equine, LLC*, 564 S.W.3d 331, 333 (Ky. App. 2018) (citation omitted). Findings of contempt are reviewed by appellate courts under the abuse of discretion standard, which means the trial court's order "must be reasonable and legally sound." *Id.* The underlying findings of fact are reviewed for clear error and should not be disturbed if supported by substantial evidence. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998).

## ANALYSIS

Bob argues the family court erred by holding him in contempt of the Agreed Order without an evidentiary hearing. Bob argued Provisions 2 and 3 were ambiguous as to whether the $34,540 was a separate sum to be paid in addition to the division of the account as set out in Provision 2. The family court disagreed, stating "[e]ach paragraph addresses a separate pool of funds[.]"

At this point, Bob does not address the ambiguity argument in his brief. "[A] reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979). A failure to discuss errors in a brief is the same as if no brief at all had been filed on those issues, and thus, the trial court's determination of those issues not briefed on appeal is ordinarily affirmed. *Id.* We note Bob did not file a reply brief.

Regardless of the claim of ambiguity in the Agreed Order, Bob argues that the family court's order holding him in contempt failed to discuss the requirement that contempt be proven by clear and convincing evidence, failed to discuss the shift of the burden of proof to Bob to show justification for noncompliance, failed to discuss the requirement that willfulness be also shown in a clear and convincing fashion, and ignored the reasons set forth in Bob's CR 59 motion justifying why he was not in contempt.

Contempt can either be civil or criminal in nature. *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996) (citation omitted). Bob was held in civil contempt, which includes a failure to do something pursuant to a court order, generally for the benefit of a party litigant. *Id.* This case is also an example of indirect contempt (that is, committed outside the presence of the court), so an evidentiary hearing is required. *Cabinet for Health & Fam. Servs. v. R.C.*, 661

S.W.3d 305, 315 (Ky. App. 2023). Summary adjudication of indirect contempt is usually prohibited. *Id.*

"In a civil contempt proceeding, the initial burden is on the party seeking sanctions to show by clear and convincing evidence that the alleged contemnor has violated a valid court order." *Commonwealth, Cabinet for Health & Fam. Servs. v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011). Once a prima facie case is made, "a presumption of contempt arises, and the burden of production shifts to the alleged contemnor to show, clearly and convincingly, that he or she was unable to comply with the court's order or was, for some other reason, justified in not complying." *Id.* "The alleged contemnor must offer evidence tending to show clearly that he or she made all reasonable efforts to comply. If the alleged contemnor makes a sufficient showing, then the presumption of contempt dissolves and the trial court must make its determination from the totality of the evidence, with the ultimate burden of persuasion on the movant." *Id.* (citations omitted).

Bob admittedly did not make a payment of $34,540 per the Agreed Order. No further evidence was needed to establish the prima facie case of contempt. The burden shifted to Bob. Bob chose, with advice of counsel, to submit the question of contempt based solely on whether his offered interpretation of the Agreed Order justified his decision not to pay.

The family court's August 30, 2023, Order correctly acknowledged Bob's right to an evidentiary hearing regarding contempt, but the circuit court properly found that Bob explicitly waived this right. Most rights, including constitutional rights, may be waived. *Commonwealth v. Simmons*, 394 S.W.3d 903, 907 (Ky. 2013). Since Bob waived his right to a hearing on the contempt issue and instead agreed to brief the issue of contempt, the family court did not err in issuing a contempt decision on the briefs filed and the existing record.

Bob's next question is whether the family court made required findings of fact necessary to hold him in contempt. Without question, Debby satisfied her initial burden of showing by clear and convincing evidence that Bob violated a valid court order. Bob was ordered to pay Debby $34,540 within 60 days, which he admittedly did not do. With the burden then shifting to Bob, he chose to present no evidence and submitted the matter on the reasonableness of his interpretation of the Agreed Order.

The circuit court found Bob's interpretation of what he had to pay to be unreasonable. It might just as well have been described as specious. The reference to investment gains and losses in the account cannot logically mean including the withdrawals made by Bob. If that were the case, there would be no reason for Provision 3 at all. Bob's delay-continuing and meritless explanation did not shift the burden back for the family court to have to make any further specific

findings.  Bob decided to rely on a legal argument and having done so cannot now claim a violation of his rights because he lost that argument.

## CONCLUSION

The circuit court did not abuse its discretion in holding Bob in civil contempt for failing to pay Debby $34,540 as directed by the Agreed Order. Because of Bob's express waiver, the family court did not err by failing to have an evidentiary hearing.  From our review, we can determine the clear basis for the family court's decision.  There was no dispute as to Bob's failure to make the required payment, and the family court adequately explained that Bob failed to offer a sufficient reason for his non-compliance.  The Order of the Jefferson Family Circuit Court holding Bob in contempt is AFFIRMED.[3]

ALL CONCUR.

BRIEF FOR APPELLANT:

Todd K. Bolus
Louisville, Kentucky

BRIEF FOR APPELLEE:

Allen McKee Dodd
Louisville, Kentucky

---

[3] Having affirmed the contempt decision, we expect the family court will be called upon to address claims by Debby for additional attorney's fees as well as prejudgment interest from the time the payment was originally due under the Agreed Order and perhaps post-judgment interest on any amounts not paid after any final order was entered, but those issues are not yet before us in this appeal.