[No. E046884. Fourth Dist., Div. Two. May 6, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
HEIDI ANN TRAUGOTT, Defendant and Appellant.

COUNSEL

Richard Glen Boire, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KING, J.—

## I.  INTRODUCTION

A jury of 11 persons found defendant Heidi Ann Traugott guilty of possession of methamphetamine for sale and two related misdemeanor drug offenses.[1] Found true were the allegations that defendant had suffered a prison prior under Penal Code section 667.5, subdivision (b) and a prior conviction within the meaning of Health and Safety Code section 11370.2, subdivision (c). Defendant was sentenced to a total of six years in state prison.

On appeal, defendant argues the trial court violated her constitutional and statutory rights to a unanimous verdict by accepting the verdict with only 11 jurors present and by taking the verdict in defendant's absence. She further contends she was denied effective assistance of counsel, in that counsel failed to object to the prosecutor's misstatements of the law relative to the issues of corpus delicti and aiding and abetting.

We hold that defendant's state constitutional right to a unanimous 12-person verdict was violated and that valid verdicts were not returned. We further hold that the error is structural and requires reversal. Because of our conclusion on this issue, we do not address defendant's remaining arguments.

## II.  SUMMARY OF FACTS

At approximately 1:30 a.m. on February 11, 2007, the vehicle in which defendant was seated was approached by two Riverside County Sheriff's deputies. The vehicle was located in a gas station next to a gas pump, with its

---

[1] The jury was unable to reach a verdict on one count of transporting methamphetamine.

hood open. An individual appeared to be working on the engine and defendant was in the driver's seat. One of the deputies testified that defendant's speech was rapid and that she appeared fidgety. Upon inquiry, she stated that she had used methamphetamine earlier in the evening. Following her arrest for being under the influence of drugs, the interior of the car was searched. Inside a black plastic bag located on the passenger side floor was a glass pipe and some methamphetamine. After reaching the jail, defendant reached into her bra and waistband and removed nine small plastic bags and one larger bag, all containing methamphetamine.

Testimony in defendant's trial began on Tuesday, January 29, 2008. Jurors began deliberating on Friday, February 1. On the following Monday, at approximately 3:30 p.m., the court was informed the jury had reached a verdict. However, only 11 members of the jury were present to render the verdicts. Defendant was not present.

## III.   ANALYSIS

Defendant argues her federal and state constitutional rights were violated because a jury comprised of only 11 persons, not 12, returned guilty verdicts. The People contend defendant forfeited her right to a unanimous 12-person verdict. They base this argument on the facts that counsel stipulated to taking the verdict with only 11 jurors present and defendant absented herself from the courthouse prior to the return of the verdicts. As we explain below, we hold that defendant had not waived or forfeited her state constitutional right to a unanimous 12-person verdict and, therefore, a valid verdict was not returned in this case. The error is structural and requires reversal.

### A.   *Factual Background*

The jury commenced deliberations in the late afternoon of Friday, February 1, 2008.[2] They deliberated for a short period of time before being directed to return to continue deliberations the following Monday morning.[3] Deliberations began on Monday at approximately 8:30 in the morning. At approximately 3:00 or 3:30 in the afternoon, the jurors informed the court they had

---

[2] While it is unclear where jury deliberations took place, it would appear that the courtroom itself was used for purposes of jury deliberation because the courthouse apparently did not maintain an adequate jury room.

[3] The reporter's transcript does not reflect certain proceedings noted in the court's minute orders. For example, a minute order indicates that the jurors were admonished and ordered to return on February 4, 2008, and that defendant was "ordered to return on any and all future hearing dates." These orders are not reflected in the reporter's transcript. Additionally, minute orders for January 28 and January 31, 2008, indicate that defendant was ordered to return on future hearing dates; however, no corresponding orders can be found in the reporter's

reached a verdict. A conference was then held between Judge John G. O'Rourke (who was not the trial judge), Deputy District Attorney Al Kim, Valerie Garcia, and, by telephone, defendant's trial attorney, Gary Redinger. During this conference, the court informed counsel that a "little irregularity" had occurred. According to the court, the jurors announced they had reached a verdict and handed all the verdict forms to the bailiff; however, they had failed to reach a verdict on count 2.

At this point, the following colloquy occurred:

"MR. REDINGER: I understand that Heidi was told by the bailiff she could go home and be on call, so I don't know if that's true. That's what Heidi represented to me.

"THE COURT: Who is Heidi?

"MR. REDINGER: The defendant.

"THE COURT: Have we got a hold of her yet?

"MR. REDINGER: I reached her by phone. She is in Fontana. She indicated to me—I asked her why she wasn't in court. She indicated to me the bailiff had told her she was on call and she could go home.[4]

"THE BAILIFF: I said—what I said was stay close so your attorney can get a hold of you if the verdict comes. She will call, and you have to be here.

"MR. REDINGER: I'm only told what she told me. [¶] . . . [¶]

"THE BAILIFF: . . . I told your defendant to stay close, and when the verdict comes, that you could call her and she would have to be here shortly after.

"MR. REDINGER: Okay. I'm only reporting what my client told me. I don't know. I wasn't there obviously.

"THE COURT: She just probably misinterpreted the information.

---

transcript. Lastly, the clerk's transcript shows that the jurors were admonished prior to the court's evening recesses on January 30 and February 1, yet the reporter's transcript indicates that the jury was not so admonished.

[4] The case was tried in the City of Banning. We take judicial notice of the fact that the Banning courthouse is approximately 39 miles from the City of Fontana. (Evid. Code, §§ 452, subd. (h), 459, subd. (a).)

"MR. REDINGER: She's made all of her appearances. Perhaps we could set it for sentencing and I'll get her there, assuming it's guilty.

"THE COURT: You have no objection for me to take the verdict in her absence?

"MR. REDINGER: I have no objection, no.

"THE COURT: And you go along with that, Miss Garcia?

"MS. GARCIA: We can appear [Penal Code section] 977 so long as he has authorization, yes.

"THE COURT: You don't have written authorization on a felony. That's what's required by law. However, I think at this point in time because of the miscommunication, we could probably allow the [Penal Code section] 977 appearance and we could maybe, I think—I don't think I want to do a failure to appear, but I would put it on the record that she, after the jury dismissed, that she did not show up because she was given this bad information.

"MR. REDINGER: That's fine, your Honor. I have confidence she will show up whenever you want her.

"THE COURT: Confused information is what I would say. So I'll set the sentencing date[,] which I think has already been pre-arranged."

After some further discussion not relevant here, a recess was taken. After the recess, the following took place:

"THE COURT: Court's in session, Judge O'Rourke presiding. Present in court are the two stand-in attorneys, Mr. Kim and Miss Garcia. And we have now developed a new scenario. Juror No. 4 has escaped because he had a job interview at 4:00 o'clock and is not here. I would at this point in time proceed to take the verdict and declare the verdicts in the absence of [Juror] No. 4 unless there's a real objection to proceeding at this point in time. If so, we'd have to continue this until tomorrow and bring them all in.

"MR. KIM: No objection, Your Honor.

"MS. GARCIA: I don't have authorization to object or not object on this matter, Your Honor.

"THE COURT: You are standing in as attorney of record. You have all authorization and all power to do it. If not, you shouldn't be here.

"MS. GARCIA: I understand, Your Honor.

"THE COURT: You have to make a decision, Counsel.

"MS. GARCIA: We can proceed, Your Honor. No objection.

"THE COURT: All right. It's time. And also for the record, the defendant is not present here because she misunderstood the instruction of the bailiff and has left also, and counsel has agreed I can proceed in her absence. [¶] Is that correct, Miss Garcia?

"MS. GARCIA: Yes, Your Honor."

The remaining 11 jurors were then brought into the courtroom. The court noted, "for the record, Juror No. 4 . . . is missing. And we have agreed we would proceed in her absence because of the confusion." The verdict forms were handed to the foreperson, who confirmed that the documents he signed were the verdicts and the unsigned documents "are supposed to be unsigned." The verdicts on counts 1, 3, and 4 were then read. The jury foreperson confirmed that no verdict was reached on count 2 and that the jurors were unable to reach a verdict on that count. The court then declared a mistrial as to that count.

The court asked the foreperson whether the verdicts on counts 1, 3, and 4 were "your true and correct verdicts," and the foreperson responded, "Yes, they are." The court then asked: "All 12 members of the jury panel voted on them and you signed them accordingly?" The foreperson answered, "Yes, I did."

The court asked counsel if anyone wanted the jurors polled. Ms. Garcia said she did. The court stated, "I can't poll [Juror] No. 4," to which Ms. Garcia responded, "Yes, I understand." The remaining 11 jurors were then each asked if the verdicts on counts 1, 3, and 4 were their true verdicts, and each individually responded, "Yes."

B. *Analysis*

Article I, section 16 of the California Constitution provides: "Trial by jury is an inviolate right and shall be secured to all . . . . A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel. . . . [¶] In criminal actions in which a felony is charged, the jury shall consist of 12 persons. In criminal actions in which a misdemeanor is charged, the jury shall consist of 12 persons or a lesser number agreed on by the parties in open court." Our state Supreme

Court has "recognized that this state constitutional right is fundamental. [Citation.]" (*People v. Collins* (2001) 26 Cal.4th 297, 304 [109 Cal.Rptr.2d 836, 27 P.3d 726].)

■ "Among the essential elements of the [California constitutional] right to trial by jury are the requirements that a jury in a felony prosecution consist of 12 persons and that its verdict be unanimous. [Citations.] [¶] . . . The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations . . . . The elements of number and unanimity combine to form an essential element of unity in the verdict. By this we mean that a defendant may not be convicted except by 12 jurors who have heard all the evidence and argument and who together have deliberated to unanimity." (*People v. Collins* (1976) 17 Cal.3d 687, 693 [131 Cal.Rptr. 782, 552 P.2d 742].) "Unanimity obviously requires that each juror must vote for and acquiesce in the verdict." (*People v. Superior Court (Thomas)* (1967) 67 Cal.2d 929, 932 [64 Cal.Rptr. 327, 434 P.2d 623] (*Thomas*).) The jurors must appear in court and be asked "whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same." (Pen. Code, § 1149.) Significantly, it is "the oral declaration of the jurors, not the submission of the written verdict forms [that] constitutes the *return* of the verdict." (*People v. Green* (1995) 31 Cal.App.4th 1001, 1009 [38 Cal.Rptr.2d 401] (*Green*); see also *Stalcup v. Superior Court* (1972) 24 Cal.App.3d 932, 936 [101 Cal.Rptr. 467] [the unanimous oral declaration of the jurors is the true return of the verdict], disapproved on another point in *People v. Dixon* (1979) 24 Cal.3d 43, 50 [154 Cal.Rptr. 236, 592 P.2d 752].) Thus, "there is no verdict absent unanimity in the oral declaration." (*Green, supra*, at p. 1009.)

It follows from these authorities that a criminal defendant has a fundamental right under the California Constitution to a trial by a 12-person jury. This right requires that all 12 jurors deliberate and reach a unanimous verdict voted upon and, upon request by any party, declared orally by each of the 12 jurors. In the absence of such a declaration, "there is no verdict . . . ." (*Green, supra*, 31 Cal.App.4th at p. 1009.)

■ Although the right to a 12-person jury is fundamental, it may be waived. (*People v. Collins, supra*, 26 Cal.4th at p. 305.) A waiver of the right to a jury trial requires an express waiver *by the defendant* in open court. (*People v. Ernst* (1994) 8 Cal.4th 441, 448 [34 Cal.Rptr.2d 238, 881 P.2d 298].) "Waiver by counsel is not sufficient . . . ." (*In re Tahl* (1969) 1 Cal.3d 122, 131 [81 Cal.Rptr. 577, 460 P.2d 449].) This follows from the language in article I, section 16 of the California Constitution, providing that the right to a jury "may be waived in a criminal cause *by the consent of both parties*

*expressed in open court by the defendant* and the defendant's counsel." (Italics added; see *People v. Ernst, supra,* at p. 448.)[5]

■ Because the right to a jury may be waived, the defendant may stipulate to a trial by a jury of fewer than 12 persons. (*People v. Trejo* (1990) 217 Cal.App.3d 1026, 1033 [266 Cal.Rptr. 266]; *People v. Ames* (1975) 52 Cal.App.3d 389, 392 [124 Cal.Rptr. 894].) As the *Trejo* court stated: "[T]he California Constitution mandates a 12-person jury trial for a felony defendant only when the defendant does not waive the right to such a jury." (*People v. Trejo, supra,* at p. 1033.) Like the waiver of the right to a jury, the consent to a jury of fewer than 12 persons must be expressed by the defendant in open court. (*Ibid.; People v. Ames, supra,* at p. 392.) The rationale for this requirement "is that our constitutional guarantee of the right to a jury trial is the right as it existed at common law at the time the constitution was adopted. [Citations.] The common law jury consisted of 12 persons. [Citation.] Thus, a defendant's consent to be tried by less than 12 persons must be as formal as a waiver of the entire jury." (*People v. Ames, supra,* at p. 392.) Like a waiver of the right to trial by jury, the consent or stipulation by defendant's counsel to a jury of fewer than 12, without the express consent of defendant, is ineffective. (*Ibid.; People v. Maes* (1965) 236 Cal.App.2d 147, 148 [45 Cal.Rptr. 903].)

Furthermore, the right to an oral affirmation of the verdicts by the jurors is not a mere procedural formality. Even if each of the jurors voted to convict a defendant during deliberations, jurors may equivocate or change their vote when called upon in open court. In *Green, supra,* 31 Cal.App.4th 1001, for example, the jury announced it had reached a verdict and returned to the courtroom. (*Id.* at p. 1008.) Upon being polled and asked whether the verdicts are " 'your verdicts,' " one juror responded, " 'I don't know. I really don't.' " (*Ibid.*) The court then sent the jury back for further deliberations. (*Ibid.*) And in *Thomas, supra,* 67 Cal.2d 929, when one juror was asked whether the verdict was his verdict, he initially stated: " 'I—I don't know how to tell you this. Should I tell you . . . .' " (*Id.* at p. 930.) When asked again, the juror stated: " 'I didn't vote on it, your Honor.' " (*Id.* at p. 931.) Later, the juror said that he " 'went along with the majority' " and " 'I still go with the jury, sir.' " (*Ibid.*) After the court declared a mistrial, the People petitioned for a writ of mandate to vacate the order of mistrial and to record the jury verdict. (*Id.* at p. 930.) The Supreme Court rejected the petition, explaining: "Where, as here, a juror makes equivocal or conflicting statements as to whether he has assented to the verdict freely and voluntarily, a

---

[5] "As with the waiver required of several other constitutional rights . . . a defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent . . . as well as voluntary ' " 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.' " ' [Citations.]" (*People v. Collins, supra,* 26 Cal.4th at p. 305, fn. omitted.)

direct question of fact within the determination of the trial judge is presented. The trial judge has the opportunity to observe the subtle factors of demeanor and tone of voice which mark the distinction between acquiescence and evasion of individual choice. The trial judge can determine whether returning the jury for further deliberation is likely to secure a real verdict, or whether the juror has really disagreed so that the verdict is not unanimous and not likely to become so." (*Id.* at p. 932.) Obviously, if the equivocating juror in *Thomas* had not been present when the verdict was read and individually polled, there would have been a different result.

■ Here, defendant never expressly waived her right to a unanimous verdict of 12 jurors or consented to fewer jurors than the constitutional minimum. Although her counsel consented to having the verdicts declared by only 11 jurors, the foregoing authorities make clear that counsel's consent alone is ineffective. There was thus no verdict by a 12-person jury as required by our state Constitution. Moreover, without the oral declaration of the missing juror, there is no way to know whether that juror actually voted for the verdicts or whether, if he or she did vote for the verdicts, he or she might have equivocated or changed his or her mind when asked to affirm the verdict in court as in *Green* and *Thomas*. Indeed, although the judge indicated that Juror No. 4 "ha[d] escaped" to go to a job interview, we cannot determine from our record when Juror No. 4 left the courthouse, whether he or she finished deliberating with the other jurors and voted on the verdicts, or even how the judge learned that the juror had left. Even if the foreperson informed the court that all 12 jurors voted on the verdicts, this is insufficient to satisfy the 12-person requirement. In *Thomas*, all of the jurors were present and initially informed the court that the announced verdict was their verdict; it was only when each juror was polled that the defect in the verdict was revealed. (*Thomas, supra,* 67 Cal.2d at pp. 930–932.) Here, there is not even an initial affirmation of the verdicts from Juror No. 4. Under these circumstances, we conclude defendant did not receive the unanimous verdicts of 12 jurors that the state Constitution requires.

■ While acknowledging that a defendant has the right under California law to a unanimous verdict rendered by 12 persons and that the verdict be individually declared in open court upon request, the People argue that defendant forfeited this right by absenting herself from court.[6] They cite no authority for this proposition. Indeed, the suggestion of an implied forfeiture

---

[6] The People actually assert that "defense counsel forfeited any state right to the juror's presence." The right at issue is not merely the "juror's presence" in the courtroom, but the right to that juror's affirmation of the verdict as his or her own. If the juror's presence was all that mattered, there would be no need to poll the jurors, the jury in *Green* would not have needed to deliberate further, and there would have been no basis for the mistrial called in *Thomas*. The People's attempt to diminish the right to a unanimous, 12-person verdict by characterizing it as a right to the juror's presence in the courtroom is not well taken.

or waiver is contrary to the requirement that a waiver of the right to jury trial "be expressed *in words by the defendant* and cannot be implied from the defendant's conduct." (*In re Tahl, supra*, 1 Cal.3d at p. 131; see also *People v. Holmes* (1960) 54 Cal.2d 442, 443–444 [5 Cal.Rptr. 871, 353 P.2d 583] [waiver of right to jury trial must be expressed by defendant in words "and will not be implied from a defendant's conduct"].)

The People refer us to *People v. Concepcion* (2008) 45 Cal.4th 77 [84 Cal.Rptr.3d 418, 193 P.3d 1172] (*Concepcion*), for the proposition that defendant waived her right *to be present* in court by absenting herself from the proceedings, and argue that she "should not be able to frustrate [her attorney's] decision simply because she chose not to be there." In *Concepcion*, the defendant escaped from custody on the morning that opening statements and testimony were to begin in his trial. (*Id.* at p. 80.) In the defendant's absence, opening statements were made and testimony was taken. Following the lunch recess on the first day of trial, the court was informed that the defendant had been apprehended 20 miles away. The court was told the defendant could be returned the following morning. Nevertheless, the trial proceeded that afternoon in the defendant's absence. The defendant was in court the next day. (*Ibid.*) The California Supreme Court held that the defendant had waived his constitutional right to be present during trial by absconding from custody and that this waiver extends to the time reasonably required to return him to court after apprehension. (*Id.* at p. 79.)

Regarding the right to be present when witnesses testify at trial, the *Concepcion* court explained: "The [constitutional] right to be present may be waived . . . . [Citations.] Waiver may be express or implied. [Citation.] Cases finding implied waivers have often involved disruptive behavior. [Citations.] A waiver may also be implied by escape during trial [citation] or failure to return to trial while on bail [citation]. ' "Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted an escape from prison, or an absconding from the jurisdiction while at large on bail, during the pendency of a trial before a jury, to operate as a shield." ' [Citation.]" (*Concepcion, supra*, 45 Cal.4th at p. 82.)

*Concepcion* is not controlling here. First, that case did not involve the right to jury trial. It concerned the right to be present at trial, which flows from the confrontation clause of the Sixth Amendment to the federal Constitution, the due process clause of the Fourteenth Amendment, and article I, section 15 of the state Constitution. (*Concepcion, supra*, 45 Cal.4th at p. 81.) There is nothing in *Concepcion* that suggests the court intended to disapprove of the decisions requiring an express waiver by the defendant to waive the right to jury trial.

Moreover, even if a defendant can impliedly waive the right to a 12-person jury under some circumstances, such circumstances do not exist here. A waiver of a constitutional right "may occur by an intentional relinquishment or as the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished [citation] . . . ." (*People v. Mancheno* (1982) 32 Cal.3d 855, 865 [187 Cal.Rptr. 441, 654 P.2d 211].) Thus, there must be an inconsistency between the defendant's actions and the right being waived. In *Concepcion*, for example, the defendant's voluntary absence from the courtroom is inherently and patently inconsistent with the right to be present in the courtroom—one cannot logically assert the right to be present during trial at the same time he is absconding from custody. (See also *Taylor v. United States* (1973) 414 U.S. 17, 20 [38 L.Ed.2d 174, 94 S.Ct. 194] [defendant who flees courtroom in midst of trial knows that the trial will proceed in his absence].) In *Illinois v. Allen* (1970) 397 U.S. 337 [25 L.Ed.2d 353, 90 S.Ct. 1057], the defendant lost his right to be present during trial when his conduct was so disorderly and disruptive as to prevent the trial from proceeding. (*Id.* at pp. 342–343.) If one desires to be present during trial, he or she must allow the trial to take place; disrupting the trial is inconsistent with that right. And a defendant who engages in assaultive or threatening actions towards his counsel may forfeit the right to be represented by counsel. (*King v. Superior Court* (2003) 107 Cal.App.4th 929, 944 [132 Cal.Rptr.2d 585].) Such misconduct toward the attorney is clearly inconsistent with an intent to exercise the right to an attorney.[7]

Here, there is arguably an inconsistency with defendant's absence from the courtroom at the time the jurors returned to the courtroom and her right to be present during trial. However, even if we assume defendant's absence

---

[7] Forfeiture of the Sixth Amendment right of confrontation was addressed in *People v. Giles* (2007) 40 Cal.4th 833 [55 Cal.Rptr.3d 133, 152 P.3d 433], overruled by *Giles v. California* (2008) 554 U.S. 353 [171 L.Ed.2d 488, 128 S.Ct. 2678]. In that case, the defendant was on trial for the murder of his girlfriend. (*People v. Giles, supra*, at p. 837.) The prosecution offered into evidence the prior statement by the murder victim to an officer investigating a report of domestic violence involving the defendant and the victim. (*Id.* at p. 839.) The prior statement was offered to rebut the defendant's testimony that he acted in self-defense. Our state Supreme Court held that the defendant forfeited his right to confront the victim by killing her. (*Id.* at p. 840.) The court reasoned that the defendant's constitutional right of confrontation was not violated because it was the defendant's own wrongdoing that created his inability to confront the witness as to the prior out-of-court statement. (*Id.* at p. 850.) In reversing the decision, the United States Supreme Court held that, before the doctrine of " '[f]orfeiture by wrongdoing' " could be applied, there must be some showing that the defendant engaged in the wrongdoing with the intent of causing the witness's absence. (*Giles v. California, supra*, at pp. 366–369 [128 S.Ct. at pp. 2687–2688].) And as discussed in the text herein, the right to counsel and the right to be present at trial can be forfeited by misconduct, such as voluntarily absenting oneself from trial, disrupting proceedings, or interfering with and/or endangering counsel.

constituted a waiver of her right to be present in court when the verdicts were announced, there is nothing in the record to suggest her absence had any connection to or bearing upon the fact that only 11 jurors were in the courtroom after deliberations. Even if she had been present in the courtroom, Juror No. 4 would still have been absent and she would have been deprived of the right to that juror's oral declaration of the verdict. Because there is no inconsistency between defendant's act—her absence from the courtroom—and her right to a unanimous, 12-person verdict, her absence did not constitute a waiver of her right to a unanimous verdict of 12 jurors.

"It long has been established that the denial of the right to a jury trial constitutes a ' "structural defect[]" in the judicial proceedings' that, by its nature, results in . . . a 'miscarriage of justice.' [Citations.] . . . ' "[I]f a court should undertake to deny to a defendant charged with a felony the right of trial by jury, and after a hearing of the evidence render a judgment of conviction, it cannot be doubted that such judgment should be set aside even though there had been the clearest proof of guilt." ' [Citation.]" (*People v. Ernst, supra*, 8 Cal.4th at p. 449.) Here, the denial of a 12-person jury rendering a unanimous verdict was clearly structural and, as such, reversible per se.[8]

## IV.   DISPOSITION

The judgment is reversed.

Miller, J., concurred.

**HOLLENHORST, Acting P. J.,** Concurring.—I concur in the result.

Penal Code section 1147[1] required that the jury be discharged when only 11 jurors appeared to deliver the verdict. The presence of each of the jurors during the declaration of the verdict in open court is a minimal requirement essential to ensure a unanimous jury verdict. (*Chipman v. Superior Court* (1982) 131 Cal.App.3d 263, 266 [182 Cal.Rptr. 123].) Thus, no valid verdict could be delivered in the absence of Juror No. 4, and his or her absence was structural error requiring reversal. (See *People v. Cahill* (1993) 5 Cal.4th 478, 501–502 [20 Cal.Rptr.2d 582, 853 P.2d 1037].) "[I]n some instances [errors] may result in a 'miscarriage of justice' . . . without regard to the strength of

---

[8] Because we reverse the judgment based upon our state Constitution, we do not consider whether the federal constitutional right to jury trial was also violated.

[1] "When the jury have agreed upon their verdict, they must be conducted into court by the officer having them in charge. Their names must then be called, and if all do not appear, the rest must be discharged without giving a verdict. In that case the action may be again tried." (Pen. Code, § 1147.)

the evidence presented at trial . . . because they operate to deny a criminal defendant the constitutionally required 'orderly legal procedure' . . . ." (*Ibid.*)

As the court stated in *People v. Loving* (1977) 67 Cal.App.3d Supp. 12, 16 [136 Cal.Rptr. 851], "Absent strict compliance with article I, section 16 of the Constitution, it is not only irregular and uncommon to proceed with 11 jurors, it is reversible error to proceed with 11 jurors. [Citation.]" The presence of Juror No. 4 was essential to the reliability of the verdict, and without his presence, the verdict cannot stand. (See *People v. Thornton* (1984) 155 Cal.App.3d 845, 859–860 [202 Cal.Rptr. 448] [if the jury merely returns a written verdict but fails to unanimously endorse the verdict in open court, the verdict cannot normally be sustained solely on the basis of the written form].)