LAVIN, J.
*141 *378 INTRODUCTION
Under the California Constitution, a criminal defendant has the right to a unanimous jury verdict. The jury in this case returned verdict forms finding defendant Christopher Bailey guilty of driving under the influence of alcohol (count 1) and driving with a blood alcohol content of 0.08 percent or more (count 2)-but when the trial court polled the jury, one juror replied that she did not find defendant guilty of count 1. Notwithstanding the lack of a *379 unanimous verdict on count 1, the court recorded guilty verdicts for both counts and discharged the jury.
Defendant contends that the court erred by discharging the jury without a unanimous verdict on count 1 and that the evidence at the preliminary hearing was insufficient to hold him to answer for count 3-driving under the combined influence of an alcoholic beverage and a drug. We hold that defendant was denied his constitutional right to a unanimous verdict as to count 1, no objection was required to preserve the issue, the error is structural, and retrial of that count would violate the prohibition against double jeopardy. We also conclude, however, that the court properly denied defendant's pretrial motion to dismiss count 3.
PROCEDURAL BACKGROUND
By information filed April 7, 2016, defendant was charged with driving under the influence of an alcoholic beverage ( Veh. Code, § 23152, subd. (a) ; count 1); driving with a blood alcohol content (BAC) of 0.08 percent or more ( Veh. Code, § 23152, subd. (b) ; count 2); and driving a vehicle under the combined influence of alcohol and a drug ( Veh. Code, § 23152, subd. (f) ; count 3).[1] The information alleged that defendant had previously been convicted of driving under the influence causing bodily injury under Vehicle Code section 23153, subdivision (a), and that the prior conviction was a strike prior ( Pen. Code, 2 § 667, subd. (d); § 1170.12, subd. (b) ), a prison prior (§ 667.5, subd. (b) ), and subjected him to increased punishment under Vehicle Code section 23550.5, subdivision (a). Defendant pled not guilty and denied the allegations.
Before trial, defendant moved to dismiss all counts under section 995; the motion was denied. After the prosecution rested at trial, defendant moved to dismiss all counts under section 1118.1. The trial court denied the section 1118.1 motion as to counts 1 and 2 but granted it as to count 3. While the jury was deliberating, defendant waived his right to a jury trial on the prior-conviction allegations.
The jury returned verdict forms finding defendant guilty of counts 1 and 2, and *142 defense counsel asked the court to poll the jurors. When the clerk asked each juror if the verdict represented his or her individual verdict, Juror No. 4 answered, "No." The court followed up: "Okay. It is not your-so you did not intend to vote guilty as to count 1?" Juror No. 4 responded, "Yes." Then *380 the court asked, "And guilty as to count 2?" Juror No. 4 said, "Yes." Finally, the court asked, "Did you intend to vote guilty as to count 2? So those are your verdicts?" Juror No. 4 answered, "Yes." After the clerk polled the remaining jurors, the court thanked the jurors for their service and excused them. Once the jury left the courtroom, defense counsel objected to the court's acceptance of the verdict. Neither the court nor the prosecutor responded.
Defendant waived his right to a court trial on the prior-conviction allegations and admitted them. The court then sentenced defendant to an aggregate prison term of five years. The court selected count 1 as the base term and sentenced defendant to five years-the middle term of two years, doubled for the strike prior ( § 667, subd. (d) ; § 1170.12, subd. (b) ), plus one year for the prison prior (§ 667.5, subd. (b) ). The court imposed an identical sentence for count 2 and stayed the sentence under section 654.
Defendant filed a timely notice of appeal.
FACTUAL BACKGROUND
According to the evidence presented at the preliminary hearing,[3] on October 16, 2015, California Highway Patrol Officer James Tettleton saw three Chevrolet Camaros speeding down the freeway. Tettleton followed the cars as they exited the freeway and noticed they were parked under a sign that read "No Stopping Anytime," and each car had tinted front windows. Tettleton pulled up behind the group, turned on his lights, and told the drivers to remain parked.
Tettleton walked to the front car. Defendant was in the driver's seat. As he approached, Tettleton smelled "the strong odor of burnt cannabis" and alcohol coming from inside defendant's Camaro. Tettleton asked defendant when he had last smoked marijuana and how much alcohol he had had to drink. Defendant replied that he had smoked marijuana 30 minutes earlier and consumed one Corona beer. Tettleton told defendant to get out of the car, then escorted defendant to the patrol car. As he passed the other two cars, Tettleton told the drivers, "you guys can both go about your day." In response to additional questions, defendant revealed that he had actually smoked marijuana five minutes before he was pulled over.
Tettleton administered four field sobriety tests. The horizontal gaze nystagmus test indicated defendant "could be potentially under the influence of *381 alcohol and marijuana." Defendant's performance on the one leg stand "could indicate impairment" and his performance on the walk and turn "contribute[s] to impairment, as well." Tettleton then administered a blood alcohol test using a preliminary alcohol screening device, which returned readings of 0.107 percent BAC at 11:10 p.m. and 0.106 percent BAC at 11:13 p.m. Tettleton arrested defendant. He later administered a BAC breath test using a Datamaster device, which generated results of 0.09 percent at 12:00 a.m. and 0.09 percent at *143 12:03 a.m. Tettleton testified that he had successfully completed the requisite training certified by the Commission on Peace Officer Standards and Training to qualify him to testify at preliminary hearings.
DISCUSSION
1. The Section 995 Motion**
2. The jury did not reach a unanimous verdict for count 1.
In response to our request for supplemental briefing, defendant contends that the court violated his right to a unanimous jury when it recorded a non-unanimous verdict for count 1 and that the double jeopardy clause bars retrial of that count. The People argue the verdict was unanimous, defendant forfeited the issue, any error was harmless, and the double jeopardy clause does not bar retrial.
We hold that when a polled juror disavows the written verdict but the court nevertheless records it, the court violates the defendant's right to a unanimous jury under the California Constitution. We also hold that defendant was not required to object to preserve the issue, the error is structural, and double jeopardy bars retrial of that count.
2.1. Right to a Unanimous Verdict
Article I, section 16, of the California Constitution provides: "Trial by jury is an inviolate right and shall be secured to all.... A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel.... [¶] In criminal actions in which a felony is charged, the jury shall consist of 12 persons." The right to a jury trial is fundamental in this State ( People v. Collins (2001) 26 Cal.4th 297, 304, 109 Cal.Rptr.2d 836, 27 P.3d 726 ), and among the "essential elements" of that fundamental right are the number of people *382 comprising the jury (12) and the unanimity of their verdict ( People v. Collins (1976) 17 Cal.3d 687, 692-693, 131 Cal.Rptr. 782, 552 P.2d 742, limited on another ground by People v. Fields (1983) 35 Cal.3d 329, 351, fn. 9, 197 Cal.Rptr. 803, 673 P.2d 680 ). Accordingly, "to be valid[,] a criminal verdict must express the independent judgment of each juror. [Citation.]" ( Chipman v. Superior Court (1982) 131 Cal.App.3d 263, 266, 182 Cal.Rptr. 123 ( Chipman ).)
To safeguard this fundamental right, the "Legislature has set forth in prescriptive detail the procedures that trial courts must follow in receiving a jury verdict." ( People v. Carbajal (2013) 56 Cal.4th 521, 530, 155 Cal.Rptr.3d 335, 298 P.3d 835.) When the jury announces it has reached a verdict, the officer in charge of the jurors must bring them to court. (§ 1147.) Then, the court or clerk must ask the jurors if they have agreed on the verdict, "and if the foreman answers in the affirmative, they must, on being required, declare the same." (§ 1149.) Before the verdict is recorded, either party may ask the court to poll the jurors individually. (§ 1163.) If any juror answers "in the negative, the jury must be sent out for further deliberation." ( Ibid . )
This polling procedure allows the court to determine whether the written verdict form "represents the 'true verdict,' i.e., the verdict that each and every juror is willing to hold to under the eyes of the world, or whether it is a product of mistake or unduly precipitous judgment." ( People v. Thornton (1984) 155 Cal.App.3d 845, 859, 202 Cal.Rptr. 448.) To assure that the verdict expresses the unanimous judgment of all jurors, "any juror is empowered *144 to declare, up to the last moment, that he dissents from the verdict. [Citation.]" ( Chipman , supra , 131 Cal.App.3d at p. 266, 182 Cal.Rptr. 123 ; accord, People v. Traugott (2010) 184 Cal.App.4th 492, 501, 109 Cal.Rptr.3d 66 ( Traugott ) ["the right to an oral affirmation of the verdicts by the jurors is not a mere procedural formality. Even if each of the jurors voted to convict a defendant during deliberations, jurors may equivocate or change their vote when called upon in open court"].)
The verdict is complete only if no juror expresses disagreement on polling. (§ 1164, subd. (a).) Thus, "it is 'the oral declaration of the jurors, not the submission of the written verdict forms [that] constitutes the return of the verdict.' " ( Traugott , supra , 184 Cal.App.4th at p. 500, 109 Cal.Rptr.3d 66, alteration in Traugott .) In other words, " 'there is no verdict absent unanimity in the oral declaration.' [Citation.]" ( Ibid . ) Finally, the court may not discharge the jury "until the court has verified on the record that the jury has ... reached a verdict ... on all issues before it...." (§ 1164, subd. (b); see People v. Superior Court (Marks ) (1991) 1 Cal.4th 56, 73, fn. 15, 2 Cal.Rptr.2d 389, 820 P.2d 613 ( Marks ) ["We emphasize the importance of this safeguard against nonconforming verdicts and urge strict compliance to forestall procedural quagmires such as the one we labor through today."].)
*383 2.2. Proceedings Below
Defendant's case was submitted to the jury on June 20, 2016. Later that day, the jury returned verdict forms finding defendant guilty of both charged counts. After the clerk read each verdict form and asked whether it was the jury's verdict, the jurors collectively answered in the affirmative.
Defense counsel asked the court to poll the jury. The clerk instructed the jurors, "Ladies and gentlemen of the jury, when your juror number is called, please answer 'yes' or 'no' to the following question: Is this your individual verdict ...?" In response, the first three jurors individually answered yes. Then the following occurred:
"Clerk. Juror number 4.
Juror 4. No.
Court. Okay. It is not your-so you did not intend to vote guilty as to count 1?
Juror 4. Yes.
Court. And guilty as to count 2?
Juror 4. Yes.
Court. Did you intend to vote guilty as to count 2? So those are your verdicts?
Juror 4. Yes."
The remaining jurors were polled and each answered that the verdict was his or hers.
The court then thanked the jurors for their time, told them they had completed their service, and instructed them with CALCRIM No. 3590. That instruction provides in part, "Now that the case is over, you may choose whether or not to discuss the case and your deliberations with anyone." Finally, the court concluded, "Everyone is excused. Go to the second floor, jury services, and they will give you your check-out slips so that you [can] check out."
When the jurors left the courtroom, the court turned to defense counsel and asked, "Concerning [defendant's] court trial as to his priors and probation and sentencing, when would you like to do that?" Counsel replied, "Yes. And then just for the record, defense objects to the acceptance of that verdict just based *384 on Juror No. 4's responses. I didn't feel confident that was her verdict. It was confusing to me, and I think she should have been further polled *145 and explained why she was changing. And her demeanor seemed to be uncertain."
Neither the court nor the prosecutor responded. The court did not attempt to recall the jurors or declare a mistrial. Instead, the verdicts were recorded, and defendant admitted his prior convictions and was sentenced that day.
2.3. Juror No. 4 did not agree with the verdict.
The colloquy between the court and Juror No. 4 is clear: the juror did not find defendant guilty of count 1. The People nevertheless invite us to interpret the exchange as establishing that Juror No. 4 intended to convict. We decline their invitation.
When the clerk asked the jurors, "Is this your individual verdict," Juror No. 1 said yes. Juror No. 2 said yes. Juror No. 3 said yes. But Juror No. 4 said no. When the court asked her, "So you did not intend to vote guilty as to count 1?" Juror No. 4 said yes-that is, she confirmed she "did not intend to vote guilty as to count 1." Plainly, Juror No. 4 disagreed with the count 1 verdict.
Given the clear textual meaning of this exchange, to the extent anything about Juror No. 4's body language or tone of voice indicated her words were ambiguous or susceptible to another interpretation, the court and prosecutor were required to make a record of it. (See, e.g., People v. Superior Court (1967) 67 Cal.2d 929, 932, 64 Cal.Rptr. 327, 434 P.2d 623, italics added [where "a juror makes equivocal or conflicting statements as to whether he has assented to the verdict freely and voluntarily," "subtle factors of demeanor and tone of voice" can help the court determine whether additional deliberations may be helpful].) But on the record before us, we cannot speculate that Juror No. 4's apparently clear words had some other meaning.
2.4. Defendant did not forfeit the error.
The People argue defendant has forfeited this claim by objecting to the non-unanimous verdict only after the jury was discharged. (See People v. Thornton , supra , 155 Cal.App.3d 845, 202 Cal.Rptr. 448 [court has no jurisdiction to recall discharged jurors].) In support of that proposition, they cite to cases in which the defendant failed to request polling, the court failed to complete the polling, a polled juror responded ambiguously, or the polled jurors responded unanimously. (See People v. Anzalone (2013) 56 Cal.4th 545, 549-550, 555, 155 Cal.Rptr.3d 352, 298 P.3d 849 [failure to request jury polling where there is no evidence of juror disagreement is not structural error];
*385 Keener v. Jeld-Wen, Inc. (2009) 46 Cal.4th 247, 265, 92 Cal.Rptr.3d 862, 206 P.3d 403 [failure to object to incomplete polling of a juror]; People v. Wright (1990) 52 Cal.3d 367, 415, 276 Cal.Rptr. 731, 802 P.2d 221, limited on another ground by People v. Williams (2010) 49 Cal.4th 405, 459, 111 Cal.Rptr.3d 589, 233 P.3d 1000 [failure to object to incomplete jury polling]; People v. Lessard (1962) 58 Cal.2d 447, 452, 25 Cal.Rptr. 78, 375 P.2d 46 [failure to object where the record incorrectly reflected that 11 of 12 jurors had been polled and the verdict was in fact unanimous]; Zagami, Inc. v. James A. Crone, Inc. (2008) 160 Cal.App.4th 1083, 1092, 74 Cal.Rptr.3d 235 [failure to request clarification of an ambiguous verdict]; People v. Romero (1982) 31 Cal.3d 685, 693, 183 Cal.Rptr. 663, 646 P.2d 824 [jury rendered a unanimous verdict, but months later, some jurors revealed disagreement about the verdict].) "It is axiomatic that cases are not authority for propositions not considered." ( *146 People v. Casper (2004) 33 Cal.4th 38, 43, 14 Cal.Rptr.3d 43, 90 P.3d 1203.) Yet the People do not explain why those cases should apply to the wholly different circumstances at issue here.
Nor do the People cite any authority for the proposition that a defendant must object to preserve a challenge to an incomplete or non-unanimous verdict-and our research has revealed none. To the contrary, numerous cases have held that the fundamental right to a unanimous verdict by a 12-person jury cannot be forfeited.
Traugott is instructive. ( Traugott , supra , 184 Cal.App.4th 492, 109 Cal.Rptr.3d 66.) As the California Supreme Court described it, "Traugott was tried by a 12-person jury, which returned verdict forms indicating findings that she possessed methamphetamine for sale and had suffered a prior conviction. The jury reported about 3:30 p.m. that it had reached a verdict. [Citation.] ... [¶] ... [By the time the court convened to take the verdict, however,] Juror No. 4 had left to go to a job interview. [Citation.] The court indicated it would take the verdicts in the absence of Juror No. 4 unless there was an objection.... [D]efense counsel replied, without conferring with her absent client, " 'We can proceed, Your Honor. No objection.' " [Citation.]
"The remaining 11 jurors returned to the courtroom, the clerk read the verdict, and the foreperson acknowledged it as correct. ( Traugott , supra , 184 Cal.App.4th at p. 499 [109 Cal.Rptr.3d 66].) Defendant's counsel asked the court to poll the jury. The court responded: 'I can't poll [Juror] No. 4.' ( Ibid . ) Defense counsel replied, " 'Yes, I understand.' " The remaining jurors were polled and affirmed the verdict. ( Ibid . )
"The Court of Appeal reversed. It noted that while a defendant's state constitutional right to a unanimous 12-person jury is fundamental, a defendant can waive it. ( Traugott , supra , 184 Cal.App.4th at pp. 500-501 [109 Cal.Rptr.3d 66].) The *386 problem was that the defendant did not expressly waive this right and counsel's consent was insufficient. ( Id . at p. 502 [109 Cal.Rptr.3d 66].) As a result, the court held that the defendant's conviction could not stand because she did not receive a unanimous verdict of 12 jurors. ( Ibid . ) The court stated that 'the right to an oral affirmation of the verdicts by the jurors is not a mere procedural formality,' because jurors 'may equivocate or change their vote when called upon in open court.' ( Id . at p. 501 [109 Cal.Rptr.3d 66].) If an equivocating juror is not present in open court to be polled, the court and counsel cannot be confident that the verdict is unanimous. ( Id . at pp. 501-502 [109 Cal.Rptr.3d 66].)" ( People v. Anzalone , supra , 56 Cal.4th at pp. 559-560, 155 Cal.Rptr.3d 352, 298 P.3d 849, fn. omitted.)
Similarly, in Garcia , the court excused a juror during deliberations. ( People v. Garcia (2012) 204 Cal.App.4th 542, 548, 138 Cal.Rptr.3d 855.) After the juror had been replaced with an alternate, the court learned the jury had previously reached a verdict on all but one count. ( Ibid . ) The court sealed the earlier verdicts, and the newly constituted jury reached a verdict on the remaining count and its enhancement. ( Id . at pp. 548-549, 138 Cal.Rptr.3d 855.) At the defendant's request, the court polled the 11 participating jurors as to the sealed verdicts and polled all 12 jurors on the remaining verdict. ( Id. at p. 549, 138 Cal.Rptr.3d 855.) The court then recorded all the verdicts. ( Ibid . ) Eleven days later, the court brought the discharged juror back to court; she said the sealed verdicts had been hers. ( Ibid . ) Notwithstanding the agreement of the prosecutor, defendant's counsel, and codefendant's counsel to this procedure, the reviewing court held that defendant did not consent to a verdict of *147 fewer than 12 jurors. ( Id . at pp. 548-549, 552-553, 138 Cal.Rptr.3d 855.)
Furthermore, the California Supreme Court has long held that no objection is required in situations analogous to the one before us. In Marks , for example, the Supreme Court addressed section 1157, which provides that when a trier of fact fails to specify the degree of an offense, the verdict is deemed a conviction of the lesser degree. ( Marks , supra , 1 Cal.4th at p. 71, 2 Cal.Rptr.2d 389, 820 P.2d 613.) Thus, even though the jury in that case found the defendant guilty of murder, found a special-circumstance allegation true, and imposed a death verdict, its failure to specify the degree of murder explicitly meant that as a matter of law, its verdict was for second degree murder. ( Id . at pp. 72-74, 2 Cal.Rptr.2d 389, 820 P.2d 613.)
The Supreme Court held the defendant had "no obligation to bring the omission to the court's attention." ( Marks , supra , 1 Cal.4th at p. 77, fn. 20, 2 Cal.Rptr.2d 389, 820 P.2d 613.) The court analogized to Curry , which held that under the California Constitution, when a trial court declares a mistrial without legal necessity or the defendant's consent, "his mere silence in the face of an ensuing discharge cannot be deemed a waiver. [Citations.]" ( Curry v. Superior Court (1970) 2 Cal.3d 707, 713, 87 Cal.Rptr. 361, 470 P.2d 345 ; Marks , at p. 77, fn. 20, 2 Cal.Rptr.2d 389, 820 P.2d 613.)
*387 In so holding, the Marks court emphasized that "our state law requires and directs regularity in the jury's verdict" ( Marks , supra , 1 Cal.4th at p. 72, fn. 14, 2 Cal.Rptr.2d 389, 820 P.2d 613 ), and reasoned that "[w]hen the verdict is 'deemed of the lesser degree' by operation of law, the prosecution bears at least partial responsibility. The consequences of an irregular verdict are well settled, and nothing precludes the prosecution from calling the deficiency to the court's attention before it discharges the panel. (See §§ 1161-1164.) Since any failure to do so results from neglect rather than lack of notice and opportunity to be heard, the People's right to due process is accordingly not offended." ( Id. at p. 77, 2 Cal.Rptr.2d 389, 820 P.2d 613, fns. omitted.)
We see no reason to treat a present juror's clear repudiation of a verdict during polling differently than the silence of an absent juror. In California, the right to a jury trial includes the right to a unanimous 12-person verdict, orally affirmed by each individual juror. In the absence of an express waiver by the defendant, an 11-person verdict violates that right-regardless of the reason it occurs. Nor do we see any reason to treat a polled juror's statement that the verdict is not hers differently from the jury's failure to explicitly designate the degree of an offense. In all of these circumstances, because the right to a jury trial is personal to the defendant, it cannot be forfeited by defense counsel's failure to object. (See, e.g., People v. Blackburn (2015) 61 Cal.4th 1113, 1130, 191 Cal.Rptr.3d 458, 354 P.3d 268 [in a mentally-disordered-offender commitment-extension hearing, the decision to waive a jury trial belongs to the defendant in the first instance, and the trial court must elicit the waiver decision from the defendant on the record in a court proceeding]; In re Tahl (1969) 1 Cal.3d 122, 131, 81 Cal.Rptr. 577, 460 P.2d 449 [in California, jury trial waiver "must be expressed in words by the defendant and cannot be implied from the defendant's conduct" or counsel's statements].)
Having concluded the court's erroneous recording of the non-unanimous verdict is properly before us, we turn to the question of whether defendant may be retried *148 on count 1.[5]
2.5. The double jeopardy clause bars retrial.
Article I, section 15, of the California Constitution provides, "Persons may not twice be put in jeopardy for the same offense...." " 'The fundamental nature of the guarantee against double jeopardy can hardly be doubted. Its origins can be traced to Greek and Roman times, and it became *388 established in the common law of England long before this Nation's independence.' [Citation.] 'The prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial.' [Citation.]" ( Marks , supra , 1 Cal.4th at pp. 71-72, 2 Cal.Rptr.2d 389, 820 P.2d 613.)
"Implementing this constitutional command, the decisions of [the California Supreme Court] have settled the now familiar rules that (1) jeopardy attaches when a defendant is placed on trial in a court of competent jurisdiction, on a valid accusatory pleading, before a jury duly impaneled and sworn, and (2) a discharge of that jury without a verdict is equivalent in law to an acquittal and bars a retrial, unless the defendant consented thereto or legal necessity required it. [Citations.]" ( Curry v.Superior Court , supra , 2 Cal.3d at p. 712, 87 Cal.Rptr. 361, 470 P.2d 345 ; see also People v. Hernandez (2003) 30 Cal.4th 1, 5, 131 Cal.Rptr.2d 514, 64 P.3d 800 ["The appellate court correctly observed that a discharge of the entire jury without a verdict is equivalent to an acquittal and bars a retrial unless defendant consented to it, or legal necessity required it."].)
Here, judgment was entered in a court of competent jurisdiction on a valid accusatory pleading before a jury duly impaneled and sworn. Thus, jeopardy had attached. As discussed, defendant did not consent to an 11-person verdict, and the court did not declare a mistrial. Since the jury was discharged without a verdict, the only remaining issue is whether legal necessity justified the discharge.
"California provides its citizens a greater degree of protection against double jeopardy than that provided by federal law by placing limitations on what constitutes 'legal necessity.' [Citations.] A judicial error of law or procedure does not constitute legal necessity. [Citations.] Rather, 'legal necessity for a mistrial typically arises from an inability of the jury to agree [citations] or from physical causes beyond the control of the court [citations], such as the death, illness, or absence of judge or juror [citations] or of the defendant [citations].' [Citation.]" ( Carrillo v. Superior Court (2006) 145 Cal.App.4th 1511, 1525, 52 Cal.Rptr.3d 614, fn. omitted; see also People v. Sullivan (2013) 217 Cal.App.4th 242, 157 Cal.Rptr.3d 884 [where the jury reaches a verdict on a substantive offense but deadlocks on an enhancement, a court's declaration of mistrial on both bars retrial under the double jeopardy clause because there was no legal necessity for mistrial on the substantive count]; People v. Batts (2003) 30 Cal.4th 660, 686-687, 134 Cal.Rptr.2d 67, 68 P.3d 357 [federal constitution provides only minimum standards of double jeopardy protection, *149 and in some contexts, the California Constitution provides greater protection].) *389 The People devote one sentence to their claim that retrial is proper and point us to one case- Chipman -to support that claim. ( Chipman , supra , 131 Cal.App.3d at p. 263, 182 Cal.Rptr. 123.) Yet Chipman did not address the issue before us. In that case, "although Juror No. 12 had acquiesced in the verdict during deliberations, she answered 'No' to the clerk's question of whether this was her true verdict. When the court asked the juror whether she had voted 'Yes' in the jury room and she admitted that she had, the court accepted this prior concurrence as contributing to a unanimous verdict. The court failed to establish that the juror's present verdict was anything other than the 'No' with which she had responded to the poll. The court thus did not give effect to the right of a juror to change his verdict at any time up to the time that it is finally recorded." ( Id . at p. 267, 182 Cal.Rptr. 123.)
The defendant moved for a mistrial, which the court denied. The defendant then petitioned the court of appeal for a writ of mandate directing the superior court "to vacate the order for recordation of the verdict and to grant the motion for mistrial." ( Chipman , supra , 131 Cal.App.3d at p. 267, 182 Cal.Rptr. 123.) The appellate court granted the writ. Given the procedural posture of the case, Chipman did not have occasion to consider whether the double jeopardy clause would have barred a retrial if the defendant had not moved for a mistrial, as in this case. Indeed, since the Chipman court granted the defendant's requested relief, it declined to address the substantive double jeopardy issue at all: the court devoted only a paragraph to the issue. ( Ibid . ; see, e.g., People v. Barragan (2004) 32 Cal.4th 236, 243, 9 Cal.Rptr.3d 76, 83 P.3d 480 [cases are not authority for propositions not considered therein].)
Here, of course, defendant did not request a mistrial, and the court did not grant one. Indeed, as the jury had deliberated for only an hour, and there is nothing in the record to indicate the jury was hopelessly deadlocked or would be unable to reach a verdict if it had continued deliberating, the court was in no position to declare a mistrial. ( People v. Medina (1980) 107 Cal.App.3d 364, 370, 165 Cal.Rptr. 622.) And because the court discharged the jury without a verdict, Juror No. 4 was not given the chance to persuade the other jurors to acquit defendant of count 1. Because the jury was discharged without a verdict, without legal necessity, and without defendant's consent, defendant may not be retried for count 1.
DISPOSITION
Count 1 is reversed and the matter is remanded with directions to enter a verdict of acquittal for count 1. The judgment is modified to lift the stay on count 2 and to strike the fees associated with count 1. ( Pen. Code § 1260 [appellate courts' authority to modify judgments];
*390 People v. Alford (2010) 180 Cal.App.4th 1463, 1468-1469, 1472-1473, 103 Cal.Rptr.3d 898, review den. Apr. 22, 2010, S180373 [modifying judgment to impose and stay a sentence under Pen. Code § 654 ].) In all other respects, the judgment is affirmed as modified.
Upon remand, the superior court is directed to: (1) modify the minute order of June 20, 2016, to reflect that defendant was acquitted of count 1, (2) modify the minute order of June 20, 2016, to reflect the judgment as modified, (3) amend the abstract of judgment to reflect the judgment as modified, and (4) send a certified copy of the amended abstract of judgment *150 to the Department of Corrections and Rehabilitation.
WE CONCUR:
EDMON, P. J.
EGERTON, J.

Effective July 1, 2018, the legislature amended Vehicle Code section 23152 and redesignated subdivision (f) without substantive change as subdivision (g). (Stats. 2016, ch. 765, § 1.)

When reviewing the denial of a section 995 motion, we " 'directly review[ ] the determination of the magistrate holding the defendant to answer.' [Citations.]" (Lexin v. Superior Court (2010) 47 Cal.4th 1050, 1071-1072.) Accordingly, we limit our discussion to the evidence presented at the preliminary hearing.

See footnote *, ante .

As the error is structural, reversal is required regardless of prejudice. (Traugott , supra , 184 Cal.App.4th at p. 496, 109 Cal.Rptr.3d 66 ; People v. Blackburn , supra , 61 Cal.4th at pp. 1132-1134, 191 Cal.Rptr.3d 458, 354 P.3d 268 [failure to obtain a valid jury trial waiver is tantamount to the denial of a jury trial and defies ordinary harmless error analysis.].)