Filed 10/10/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B275818 |
| Plaintiff and Respondent, | Los Angeles County<br>Super. Ct. No. TA138992 |
| v. | |
| CHRISTOPHER BAILEY, | **Order Modifying Opinion** |
| Defendant and Appellant. | [No change in judgment] |

BY THE COURT:*

It is ordered that the opinion filed September 20, 2018, is modified as set forth below. There is no change in the judgment.

> On page 15, third and fourth lines, change "[failure to request clarification where a juror's response to polling was ambiguous];" to "[failure to object to incomplete jury polling];"

---

*EDMON, P. J.              LAVIN, J.              EGERTON, J.

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>CHRISTOPHER BAILEY,<br><br>　　Defendant and Appellant. | B275818<br><br>Los Angeles County<br>Super. Ct. No. TA138992 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge. Affirmed as modified in part, reversed in part, and remanded with directions.

Morgan H. Daly, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell, Lindsay Boyd, and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1100, 8.1105(b), and 8.1110, this opinion is certified for publication with the exception of part 1 of the Discussion.

## INTRODUCTION

Under the California Constitution, a criminal defendant has the right to a unanimous jury verdict. The jury in this case returned verdict forms finding defendant Christopher Bailey guilty of driving under the influence of alcohol (count 1) and driving with a blood alcohol content of 0.08 percent or more (count 2)—but when the trial court polled the jury, one juror replied that she did not find defendant guilty of count 1. Notwithstanding the lack of a unanimous verdict on count 1, the court recorded guilty verdicts for both counts and discharged the jury.

Defendant contends that the court erred by discharging the jury without a unanimous verdict on count 1 and that the evidence at the preliminary hearing was insufficient to hold him to answer for count 3—driving under the combined influence of an alcoholic beverage and a drug. We hold that defendant was denied his constitutional right to a unanimous verdict as to count 1, no objection was required to preserve the issue, the error is structural, and retrial of that count would violate the prohibition against double jeopardy. We also conclude, however, that the court properly denied defendant's pretrial motion to dismiss count 3.

## PROCEDURAL BACKGROUND

By information filed April 7, 2016, defendant was charged with driving under the influence of an alcoholic beverage (Veh. Code, § 23152, subd. (a); count 1); driving with a blood alcohol content (BAC) of 0.08 percent or more (Veh. Code, § 23152, subd. (b); count 2); and driving a vehicle under the combined influence of alcohol and a drug (Veh. Code, § 23152, subd. (f);

count 3).[1] The information alleged that defendant had previously been convicted of driving under the influence causing bodily injury under Vehicle Code section 23153, subdivision (a), and that the prior conviction was a strike prior (Pen. Code,[2] § 667, subd. (d); § 1170.12, subd. (b)), a prison prior (§ 667.5, subd. (b)), and subjected him to increased punishment under Vehicle Code section 23550.5, subdivision (a). Defendant pled not guilty and denied the allegations.

Before trial, defendant moved to dismiss all counts under section 995; the motion was denied. After the prosecution rested at trial, defendant moved to dismiss all counts under section 1118.1. The trial court denied the section 1118.1 motion as to counts 1 and 2 but granted it as to count 3. While the jury was deliberating, defendant waived his right to a jury trial on the prior-conviction allegations.

The jury returned verdict forms finding defendant guilty of counts 1 and 2, and defense counsel asked the court to poll the jurors. When the clerk asked each juror if the verdict represented his or her individual verdict, Juror No. 4 answered, "No." The court followed up: "Okay. It is not your—so you did not intend to vote guilty as to count 1?" Juror No. 4 responded, "Yes." Then the court asked, "And guilty as to count 2?" Juror No. 4 said, "Yes." Finally, the court asked, "Did you intend to vote guilty as to count 2? So those are your verdicts?" Juror No. 4 answered, "Yes." After the clerk polled the remaining jurors, the court thanked the

---

[1] Effective July 1, 2018, the legislature amended Vehicle Code section 23152 and redesignated subdivision (f) without substantive change as subdivision (g). (Stats. 2016, ch. 765, § 1.)

[2] All undesignated statutory references are to the Penal Code.

jurors for their service and excused them. Once the jury left the courtroom, defense counsel objected to the court's acceptance of the verdict. Neither the court nor the prosecutor responded.

Defendant waived his right to a court trial on the prior-conviction allegations and admitted them. The court then sentenced defendant to an aggregate prison term of five years. The court selected count 1 as the base term and sentenced defendant to five years—the middle term of two years, doubled for the strike prior (§ 667, subd. (d); § 1170.12, subd. (b)), plus one year for the prison prior (§ 667.5, subd. (b)). The court imposed an identical sentence for count 2 and stayed the sentence under section 654.

Defendant filed a timely notice of appeal.

## FACTUAL BACKGROUND

According to the evidence presented at the preliminary hearing,[3] on October 16, 2015, California Highway Patrol Officer James Tettleton saw three Chevrolet Camaros speeding down the freeway. Tettleton followed the cars as they exited the freeway and noticed they were parked under a sign that read "No Stopping Anytime," and each car had tinted front windows. Tettleton pulled up behind the group, turned on his lights, and told the drivers to remain parked.

Tettleton walked to the front car. Defendant was in the driver's seat. As he approached, Tettleton smelled "the strong

_____

[3] When reviewing the denial of a section 995 motion, we " 'directly review[ ] the determination of the magistrate holding the defendant to answer.' [Citations.]" (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1071–1072.) Accordingly, we limit our discussion to the evidence presented at the preliminary hearing.

odor of burnt cannabis" and alcohol coming from inside defendant's Camaro. Tettleton asked defendant when he had last smoked marijuana and how much alcohol he had had to drink. Defendant replied that he had smoked marijuana 30 minutes earlier and consumed one Corona beer. Tettleton told defendant to get out of the car, then escorted defendant to the patrol car. As he passed the other two cars, Tettleton told the drivers, "you guys can both go about your day." In response to additional questions, defendant revealed that he had actually smoked marijuana five minutes before he was pulled over.

Tettleton administered four field sobriety tests. The horizontal gaze nystagmus test indicated defendant "could be potentially under the influence of alcohol and marijuana." Defendant's performance on the one leg stand "could indicate impairment" and his performance on the walk and turn "contribute[s] to impairment, as well." Tettleton then administered a blood alcohol test using a preliminary alcohol screening device, which returned readings of 0.107 percent BAC at 11:10 p.m. and 0.106 percent BAC at 11:13 p.m. Tettleton arrested defendant. He later administered a BAC breath test using a Datamaster device, which generated results of 0.09 percent at 12:00 a.m. and 0.09 percent at 12:03 a.m. Tettleton testified that he had successfully completed the requisite training certified by the Commission on Peace Officer Standards and Training to qualify him to testify at preliminary hearings.

## DISCUSSION

1.    **The Section 995 Motion**

Defendant contends the trial court erroneously denied his section 995 motion as to count 3, which led to the admission of

irrelevant, prejudicial evidence about his marijuana use. We disagree.

### 1.1. Legal Principles and Standard of Review

A preliminary hearing is an evidentiary hearing that follows the filing of a felony complaint. (§ 859b.) At the hearing, the prosecution must present evidence that demonstrates "a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*People v. Uhlemann* (1973) 9 Cal.3d 662, 667.)

During the preliminary hearing, the judge sits as a magistrate whose role is limited by statute to determining whether there is "sufficient cause" to believe the defendant is guilty of a public offense. (*People v. Slaughter* (1984) 35 Cal.3d 629; see §§ 871, 872.) "The term 'sufficient cause' is generally equivalent to 'reasonable and probable cause,' that is, such a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*People v. Uhlemann, supra,* 9 Cal.3d at p. 667.) If the prosecution proves there is sufficient cause to believe the defendant is guilty of a public offense, the magistrate must hold the defendant to answer for the offense. (*Slaughter,* at pp. 636–637; § 872.)

The magistrate may " 'weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses.' " (*People v. Slaughter*, *supra*, 35 Cal.3d at p. 637.) The magistrate may rely on circumstantial evidence to form reasonable inferences of guilt (*People v. Superior Court* (*Jurado*) (1992) 4 Cal.App.4th 1217, 1226), and his or her conclusions may be "based in whole or in part upon the sworn testimony of a law enforcement officer,"

6

provided the officer has "completed a training course certified by the Commission on Peace Officer Standards and Training that includes training in the investigation and reporting of cases and testifying at preliminary hearings." (§ 872, subd. (b).)

After a defendant is held to answer and the prosecution files an information, the defendant may file a motion in the trial court under section 995 to dismiss one or more counts of the information. (See *People v. Sherwin* (2000) 82 Cal.App.4th 1404.) In reviewing the denial of that motion, "we 'in effect disregard[ ] the ruling of the superior court and directly review[ ] the determination of the magistrate holding the defendant to answer.' [Citations.] Insofar as the … section 995 motion rests on issues of statutory interpretation, our review is de novo. [Citation.] Insofar as it rests on consideration of the evidence adduced, we must draw all reasonable inferences in favor of the information [citations] and decide whether there is probable cause to hold the defendants to answer, i.e., whether the evidence is such that 'a reasonable person could harbor a strong suspicion of the defendant's guilt' [citations]." (*Lexin v. Superior Court*, *supra*, 47 Cal.4th at pp. 1071–1072.)

"In reviewing an order denying a motion to set aside an information on the ground of insufficiency of the evidence [at the preliminary hearing], we may not substitute our judgment for that of the magistrate as to the weight of the evidence or the credibility of witnesses. Every legitimate inference must be drawn in favor of the information, and as long as there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it, the prosecution must be allowed to proceed." (*Barber v. Superior Court* (1991) 1 Cal.App.4th 793, 795.)

### 1.2. The trial court properly denied the section 995 motion as to count 3.

To hold a defendant to answer for driving under the combined influence of an alcoholic beverage and a drug, the prosecution must present evidence at the preliminary hearing sufficient to raise a strong suspicion that (1) defendant drove a vehicle, and (2) when he drove, defendant was under the combined influence of an alcoholic beverage and a drug. (Veh. Code, § 23152, subd. (g); see also CALCRIM No. 2110.) Here, defendant contends the court should have dismissed count 3 because the prosecution failed to present sufficient evidence of a clear nexus between marijuana use and driving impairment— that is, that defendant was impaired *as a result of* his marijuana use. In light of defendant's admission of recent marijuana use and poor performance on field sobriety tests, the court did not err in denying the section 995 motion.

Tettleton testified that he smelled marijuana coming from defendant's car, and based on the results of defendant's nystagmus test, defendant "could be potentially under the influence of alcohol and marijuana." In addition, Tettleton testified that defendant underperformed on tests that assessed defendant's motor skills and ability to follow instructions— sobriety tests that were administered shortly after defendant admitted to smoking marijuana minutes before the stop and to drinking beer with dinner. In short, based on Tettleton's testimony, there was sufficient cause to believe defendant was guilty of driving while under the combined influence of an alcoholic beverage and a drug as alleged in count 3 of the information. (See *People v. Benner* (2010) 185 Cal.App.4th 791, 795 ["from a physical, emotional and cognitive standpoint, the

evidence readily suggests appellant's driving ability was appreciably impaired, as compared to an ordinarily prudent and cautious driver in full possession of her faculties"].)

Nor does the court's subsequent grant of the section 1118.1 motion undermine the earlier denial of the section 995 motion. To meet its burden of proving the charges beyond a reasonable doubt at trial, the prosecution must adduce substantially more evidence than is required to hold a suspect to answer at a preliminary hearing. (*People v. Slaughter*, *supra*, 35 Cal.3d at p. 637 ["the burden on the prosecution before the magistrate is quite distinct from that necessary to obtain a conviction before a judge or jury"].)

Taken as a whole, the evidence at the preliminary hearing—poor performance on field sobriety tests, admission of recent marijuana and alcohol usage, and early onset nystagmus in both eyes of an individual found sitting in the driver's seat of a car that had recently been speeding down the freeway—was sufficient to support a reasonable suspicion that defendant was impaired from a combined influence of marijuana and alcohol. Accordingly, the trial court did not err by denying defendant's 995 motion as to count 3.[4]

## 2. The jury did not reach a unanimous verdict for count 1.

In response to our request for supplemental briefing, defendant contends that the court violated his right to a unanimous jury when it recorded a non-unanimous verdict for

_____

[4] In light of our conclusion, we do not address defendant's additional contention that evidence about his marijuana use prejudiced the jurors' ability to fairly weigh the evidence as to counts 1 and 2.

9

count 1 and that the double jeopardy clause bars retrial of that count. The People argue the verdict was unanimous, defendant forfeited the issue, any error was harmless, and the double jeopardy clause does not bar retrial.

We hold that when a polled juror disavows the written verdict but the court nevertheless records it, the court violates the defendant's right to a unanimous jury under the California Constitution. We also hold that defendant was not required to object to preserve the issue, the error is structural, and double jeopardy bars retrial of that count.

### 2.1. Right to a Unanimous Verdict

Article I, section 16, of the California Constitution provides: "Trial by jury is an inviolate right and shall be secured to all … . A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel. … [¶] In criminal actions in which a felony is charged, the jury shall consist of 12 persons." The right to a jury trial is fundamental in this State (*People v. Collins* (2001) 26 Cal.4th 297, 304), and among the "essential elements" of that fundamental right are the number of people comprising the jury (12) and the unanimity of their verdict (*People v. Collins* (1976) 17 Cal.3d 687, 692–693, limited on another ground by *People v. Fields* (1983) 35 Cal.3d 329, 351, fn. 9). Accordingly, "to be valid[,] a criminal verdict must express the independent judgment of each juror. [Citation.]" (*Chipman v. Superior Court* (1982) 131 Cal.App.3d 263, 266 (*Chipman*).)

To safeguard this fundamental right, the "Legislature has set forth in prescriptive detail the procedures that trial courts must follow in receiving a jury verdict." (*People v. Carbajal* (2013) 56 Cal.4th 521, 530.) When the jury announces it has reached a

10

verdict, the officer in charge of the jurors must bring them to court. (§ 1147.) Then, the court or clerk must ask the jurors if they have agreed on the verdict, "and if the foreman answers in the affirmative, they must, on being required, declare the same." (§ 1149.) Before the verdict is recorded, either party may ask the court to poll the jurors individually. (§ 1163.) If any juror answers "in the negative, the jury must be sent out for further deliberation." (*Ibid*.)

This polling procedure allows the court to determine whether the written verdict form "represents the 'true verdict,' i.e., the verdict that each and every juror is willing to hold to under the eyes of the world, or whether it is a product of mistake or unduly precipitous judgment." (*People v. Thornton* (1984) 155 Cal.App.3d 845, 859.) To assure that the verdict expresses the unanimous judgment of all jurors, "any juror is empowered to declare, up to the last moment, that he dissents from the verdict. [Citation.]" (*Chipman*, *supra*, 131 Cal.App.3d at p. 266; accord, *People v. Traugott* (2010) 184 Cal.App.4th 492, 501 (*Traugott*) ["the right to an oral affirmation of the verdicts by the jurors is not a mere procedural formality. Even if each of the jurors voted to convict a defendant during deliberations, jurors may equivocate or change their vote when called upon in open court"].)

The verdict is complete only if no juror expresses disagreement on polling. (§ 1164, subd. (a).) Thus, "it is 'the oral declaration of the jurors, not the submission of the written verdict forms [that] constitutes the *return* of the verdict.' " (*Traugott*, *supra*, 184 Cal.App.4th at p. 500, alteration in *Traugott*.) In other words, " 'there is no verdict absent unanimity in the oral declaration.' [Citation.]" (*Ibid*.) Finally, the court may not discharge the jury "until the court has verified on the record

11

that the jury has … reached a verdict … on all issues before it … ." (§ 1164, subd. (b); see *People v. Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 73, fn. 15 (*Marks*) ["We emphasize the importance of this safeguard against nonconforming verdicts and urge strict compliance to forestall procedural quagmires such as the one we labor through today."].)

## 2.2. Proceedings Below

Defendant's case was submitted to the jury on June 20, 2016. Later that day, the jury returned verdict forms finding defendant guilty of both charged counts. After the clerk read each verdict form and asked whether it was the jury's verdict, the jurors collectively answered in the affirmative.

Defense counsel asked the court to poll the jury. The clerk instructed the jurors, "Ladies and gentlemen of the jury, when your juror number is called, please answer 'yes' or 'no' to the following question: Is this your individual verdict … ?" In response, the first three jurors individually answered yes. Then the following occurred:

> "Clerk. Juror number 4.
>
> Juror 4. No.
>
> Court. Okay. It is not your—so you did not intend to vote guilty as to count 1?
>
> Juror 4. Yes.
>
> Court. And guilty as to count 2?
>
> Juror 4. Yes.
>
> Court. Did you intend to vote guilty as to count 2? So those are your verdicts?

12

Juror 4.  Yes."

The remaining jurors were polled and each answered that the verdict was his or hers.

The court then thanked the jurors for their time, told them they had completed their service, and instructed them with CALCRIM No. 3590. That instruction provides in part, "Now that the case is over, you may choose whether or not to discuss the case and your deliberations with anyone." Finally, the court concluded, "Everyone is excused. Go to the second floor, jury services, and they will give you your check-out slips so that you [can] check out."

When the jurors left the courtroom, the court turned to defense counsel and asked, "Concerning [defendant's] court trial as to his priors and probation and sentencing, when would you like to do that?" Counsel replied, "Yes. And then just for the record, defense objects to the acceptance of that verdict just based on Juror No. 4's responses. I didn't feel confident that was her verdict. It was confusing to me, and I think she should have been further polled and explained why she was changing. And her demeanor seemed to be uncertain."

Neither the court nor the prosecutor responded. The court did not attempt to recall the jurors or declare a mistrial. Instead, the verdicts were recorded, and defendant admitted his prior convictions and was sentenced that day.

### 2.3.   Juror No. 4 did not agree with the verdict.

The colloquy between the court and Juror No. 4 is clear: the juror did not find defendant guilty of count 1. The People nevertheless invite us to interpret the exchange as establishing that Juror No. 4 intended to convict. We decline their invitation.

When the clerk asked the jurors, "Is this your individual verdict," Juror No. 1 said yes. Juror No. 2 said yes. Juror No. 3 said yes. But Juror No. 4 said no. When the court asked her, "So you did not intend to vote guilty as to count 1?" Juror No. 4 said yes—that is, she confirmed she "did not intend to vote guilty as to count 1." Plainly, Juror No. 4 disagreed with the count 1 verdict.

Given the clear textual meaning of this exchange, to the extent anything about Juror No. 4's body language or tone of voice indicated her words were ambiguous or susceptible to another interpretation, the court and prosecutor were required to make a record of it. (See, e.g., *People v. Superior Court* (1967) 67 Cal.2d 929, 932, italics added [where "a juror *makes equivocal or conflicting statements* as to whether he has assented to the verdict freely and voluntarily," "subtle factors of demeanor and tone of voice" can help the court determine whether additional deliberations may be helpful].) But on the record before us, we cannot speculate that Juror No. 4's apparently clear words had some other meaning.

### 2.4. Defendant did not forfeit the error.

The People argue defendant has forfeited this claim by objecting to the non-unanimous verdict only after the jury was discharged. (See *People v. Thornton*, *supra*, 155 Cal.App.3d 845 [court has no jurisdiction to recall discharged jurors].) In support of that proposition, they cite to cases in which the defendant failed to request polling, the court failed to complete the polling, a polled juror responded ambiguously, or the polled jurors responded unanimously. (See *People v. Anzalone* (2013) 56 Cal.4th 545, 549–550, 555 [failure to request jury polling where there is no evidence of juror disagreement is not structural error]; *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 265 [failure to

14

object to incomplete polling of a juror]; *People v. Wright* (1990) 52 Cal.3d 367, 415, limited on another ground by *People v. Williams* (2010) 49 Cal.4th 405, 459 [failure to request clarification where a juror's response to polling was ambiguous]; *People v. Lessard* (1962) 58 Cal.2d 447, 452 [failure to object where the record incorrectly reflected that 11 of 12 jurors had been polled and the verdict was in fact unanimous]; *Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092 [failure to request clarification of an ambiguous verdict]; *People v. Romero* (1982) 31 Cal.3d 685, 693 [jury rendered a unanimous verdict, but months later, some jurors revealed disagreement about the verdict].) "It is axiomatic that cases are not authority for propositions not considered." (*People v. Casper* (2004) 33 Cal.4th 38, 43.) Yet the People do not explain why those cases should apply to the wholly different circumstances at issue here.

Nor do the People cite any authority for the proposition that a defendant must object to preserve a challenge to an incomplete or non-unanimous verdict—and our research has revealed none. To the contrary, numerous cases have held that the fundamental right to a unanimous verdict by a 12-person jury cannot be forfeited.

*Traugott* is instructive. (*Traugott*, *supra*, 184 Cal.App.4th 492.) As the California Supreme Court described it, "Traugott was tried by a 12-person jury, which returned verdict forms indicating findings that she possessed methamphetamine for sale and had suffered a prior conviction. The jury reported about 3:30 p.m. that it had reached a verdict. [Citation.] … [¶] … [By the time the court convened to take the verdict, however,] Juror No. 4 had left to go to a job interview. [Citation.] The court indicated it would take the verdicts in the absence of Juror No. 4 unless there

was an objection. … [D]efense counsel replied, without conferring with her absent client, ' "We can proceed, Your Honor. No objection." ' [Citation.]

"The remaining 11 jurors returned to the courtroom, the clerk read the verdict, and the foreperson acknowledged it as correct. (*Traugott, supra,* 184 Cal.App.4th at p. 499.) Defendant's counsel asked the court to poll the jury. The court responded: 'I can't poll [Juror] No. 4.' (*Ibid.*) Defense counsel replied, ' "Yes, I understand." ' The remaining jurors were polled and affirmed the verdict. (*Ibid.*)

"The Court of Appeal reversed. It noted that while a defendant's state constitutional right to a unanimous 12-person jury is fundamental, a defendant can waive it. (*Traugott, supra,* 184 Cal.App.4th at pp. 500–501.) The problem was that the defendant did not expressly waive this right and counsel's consent was insufficient. (*Id.* at p. 502.) As a result, the court held that the defendant's conviction could not stand because she did not receive a unanimous verdict of 12 jurors. (*Ibid.*) The court stated that 'the right to an oral affirmation of the verdicts by the jurors is not a mere procedural formality,' because jurors 'may equivocate or change their vote when called upon in open court.' (*Id.* at p. 501.) If an equivocating juror is not present in open court to be polled, the court and counsel cannot be confident that the verdict is unanimous. (*Id.* at pp. 501–502.)" (*People v. Anzalone, supra,* 56 Cal.4th at pp. 559–560, fn. omitted.)

Similarly, in *Garcia,* the court excused a juror during deliberations. (*People v. Garcia* (2012) 204 Cal.App.4th 542, 548.) After the juror had been replaced with an alternate, the court learned the jury had previously reached a verdict on all but one count. (*Ibid.*) The court sealed the earlier verdicts, and the newly

constituted jury reached a verdict on the remaining count and its enhancement. (*Id.* at pp. 548–549.) At the defendant's request, the court polled the 11 participating jurors as to the sealed verdicts and polled all 12 jurors on the remaining verdict. (*Id.* at p. 549.) The court then recorded all the verdicts. (*Ibid.*) Eleven days later, the court brought the discharged juror back to court; she said the sealed verdicts had been hers. (*Ibid.*) Notwithstanding the agreement of the prosecutor, defendant's counsel, and codefendant's counsel to this procedure, the reviewing court held that defendant did not consent to a verdict of fewer than 12 jurors. (*Id.* at pp. 548–549, 552–553.)

Furthermore, the California Supreme Court has long held that no objection is required in situations analogous to the one before us. In *Marks*, for example, the Supreme Court addressed section 1157, which provides that when a trier of fact fails to specify the degree of an offense, the verdict is deemed a conviction of the lesser degree. (*Marks*, *supra*, 1 Cal.4th at p. 71.) Thus, even though the jury in that case found the defendant guilty of murder, found a special-circumstance allegation true, and imposed a death verdict, its failure to specify the degree of murder *explicitly* meant that as a matter of law, its verdict was for second degree murder. (*Id.* at pp. 72–74.)

The Supreme Court held the defendant had "no obligation to bring the omission to the court's attention." (*Marks*, *supra*, 1 Cal.4th at p. 77, fn. 20.) The court analogized to *Curry*, which held that under the California Constitution, when a trial court declares a mistrial without legal necessity or the defendant's consent, "his mere silence in the face of an ensuing discharge cannot be deemed a waiver. [Citations.]" (*Curry v. Superior Court* (1970) 2 Cal.3d 707, 713; *Marks*, at p. 77, fn. 20.)

17

In so holding, the *Marks* court emphasized that "our state law requires and directs regularity in the jury's verdict" (*Marks*, *supra*, 1 Cal.4th at p. 72, fn. 14), and reasoned that "[w]hen the verdict is 'deemed of the lesser degree' by operation of law, the prosecution bears at least partial responsibility. The consequences of an irregular verdict are well settled, and nothing precludes the prosecution from calling the deficiency to the court's attention before it discharges the panel. (See §§ 1161–1164.) Since any failure to do so results from neglect rather than lack of notice and opportunity to be heard, the People's right to due process is accordingly not offended." (*Id.* at p. 77, fns. omitted.)

We see no reason to treat a present juror's clear repudiation of a verdict during polling differently than the silence of an absent juror. In California, the right to a jury trial includes the right to a unanimous 12-person verdict, orally affirmed by each individual juror. In the absence of an express waiver by the defendant, an 11-person verdict violates that right—regardless of the reason it occurs. Nor do we see any reason to treat a polled juror's statement that the verdict is not hers differently from the jury's failure to explicitly designate the degree of an offense. In all of these circumstances, because the right to a jury trial is personal to the defendant, it cannot be forfeited by defense counsel's failure to object. (See, e.g., *People v. Blackburn* (2015) 61 Cal.4th 1113, 1130 [in a mentally-disordered-offender commitment-extension hearing, the decision to waive a jury trial belongs to the defendant in the first instance, and the trial court must elicit the waiver decision from the defendant on the record in a court proceeding]; *In re Tahl* (1969) 1 Cal.3d 122, 131 [in California, jury trial waiver "must be expressed *in words by the*

18

*defendant* and cannot be implied from the defendant's conduct" or counsel's statements].)

Having concluded the court's erroneous recording of the non-unanimous verdict is properly before us, we turn to the question of whether defendant may be retried on count 1.[5]

### 2.5. The double jeopardy clause bars retrial.

Article I, section 15, of the California Constitution provides, "Persons may not twice be put in jeopardy for the same offense … ." " 'The fundamental nature of the guarantee against double jeopardy can hardly be doubted. Its origins can be traced to Greek and Roman times, and it became established in the common law of England long before this Nation's independence.' [Citation.] 'The prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial.' [Citation.]" (*Marks, supra,* 1 Cal.4th at pp. 71–72.)

"Implementing this constitutional command, the decisions of [the California Supreme Court] have settled the now familiar rules that (1) jeopardy attaches when a defendant is placed on trial in a court of competent jurisdiction, on a valid accusatory pleading, before a jury duly impaneled and sworn, and (2) a discharge of that jury without a verdict is equivalent in law to an acquittal and bars a retrial, unless the defendant consented thereto or legal necessity required it. [Citations.]" (*Curry v.*

---

[5] As the error is structural, reversal is required regardless of prejudice. (*Traugott, supra,* 184 Cal.App.4th at p. 496; *People v. Blackburn, supra,* 61 Cal.4th at pp. 1132–1134 [failure to obtain a valid jury trial waiver is tantamount to the denial of a jury trial and defies ordinary harmless error analysis.].)

*Superior Court*, *supra*, 2 Cal.3d at p. 712; see also *People v. Hernandez* (2003) 30 Cal.4th 1, 5 ["The appellate court correctly observed that a discharge *of the entire jury* without a verdict is equivalent to an acquittal and bars a retrial unless defendant consented to it, or legal necessity required it."].)

Here, judgment was entered in a court of competent jurisdiction on a valid accusatory pleading before a jury duly impaneled and sworn. Thus, jeopardy had attached. As discussed, defendant did not consent to an 11-person verdict, and the court did not declare a mistrial. Since the jury was discharged without a verdict, the only remaining issue is whether legal necessity justified the discharge.

"California provides its citizens a greater degree of protection against double jeopardy than that provided by federal law by placing limitations on what constitutes 'legal necessity.' [Citations.] A judicial error of law or procedure does not constitute legal necessity. [Citations.] Rather, 'legal necessity for a mistrial typically arises from an inability of the jury to agree [citations] or from physical causes beyond the control of the court [citations], such as the death, illness, or absence of judge or juror [citations] or of the defendant [citations].' [Citation.]" (*Carrillo v. Superior Court* (2006) 145 Cal.App.4th 1511, 1525, fn. omitted; see also *People v. Sullivan* (2013) 217 Cal.App.4th 242 [where the jury reaches a verdict on a substantive offense but deadlocks on an enhancement, a court's declaration of mistrial on both bars retrial under the double jeopardy clause because there was no legal necessity for mistrial on the substantive count]; *People v. Batts* (2003) 30 Cal.4th 660, 686–687 [federal constitution provides only minimum standards of double jeopardy protection,

20

and in some contexts, the California Constitution provides greater protection].)

The People devote one sentence to their claim that retrial is proper and point us to one case—*Chipman*—to support that claim. (*Chipman*, *supra*, 131 Cal.App.3d at p. 263.) Yet *Chipman* did not address the issue before us. In that case, "although Juror No. 12 had acquiesced in the verdict during deliberations, she answered 'No' to the clerk's question of whether this was her true verdict. When the court asked the juror whether she had voted 'Yes' in the jury room and she admitted that she had, the court accepted this prior concurrence as contributing to a unanimous verdict. The court failed to establish that the juror's present verdict was anything other than the 'No' with which she had responded to the poll. The court thus did not give effect to the right of a juror to change his verdict at any time up to the time that it is finally recorded." (*Id*. at p. 267.)

The defendant moved for a mistrial, which the court denied. The defendant then petitioned the court of appeal for a writ of mandate directing the superior court "to vacate the order for recordation of the verdict and to grant the motion for mistrial." (*Chipman*, *supra*, 131 Cal.App.3d at p. 267.) The appellate court granted the writ. Given the procedural posture of the case, *Chipman* did not have occasion to consider whether the double jeopardy clause would have barred a retrial if the defendant had *not* moved for a mistrial, as in this case. Indeed, since the *Chipman* court granted the defendant's requested relief, it declined to address the substantive double jeopardy issue at all: the court devoted only a paragraph to the issue. (*Ibid*.; see, e.g., *People v. Barragan* (2004) 32 Cal.4th 236, 243 [cases are not authority for propositions not considered therein].)

21

Here, of course, defendant did not request a mistrial, and the court did not grant one. Indeed, as the jury had deliberated for only an hour, and there is nothing in the record to indicate the jury was hopelessly deadlocked or would be unable to reach a verdict if it had continued deliberating, the court was in no position to declare a mistrial. (*People v. Medina* (1980) 107 Cal.App.3d 364, 370.) And because the court discharged the jury without a verdict, Juror No. 4 was not given the chance to persuade the other jurors to acquit defendant of count 1. Because the jury was discharged without a verdict, without legal necessity, and without defendant's consent, defendant may not be retried for count 1.

## DISPOSITION

Count 1 is reversed and the matter is remanded with directions to enter a verdict of acquittal for count 1. The judgment is modified to lift the stay on count 2 and to strike the fees associated with count 1. (Pen. Code § 1260 [appellate courts' authority to modify judgments]; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1468–1469, 1472–1473, review den. Apr. 22, 2010, S180373 [modifying judgment to impose and stay a sentence under Pen. Code § 654].) In all other respects, the judgment is affirmed as modified.

Upon remand, the superior court is directed to: (1) modify the minute order of June 20, 2016, to reflect that defendant was acquitted of count 1, (2) modify the minute order of June 20, 2016, to reflect the judgment as modified, (3) amend the abstract of judgment to reflect the judgment as modified, and (4) send a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

## CERTIFIED FOR PARTIAL PUBLICATION

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.

23